**U.S. Department of Justice**

Civil Rights Division

*Disability Rights Section*
*4 Constitution Square*
*150 M St., NE*
*Washington, DC 20530*

February 2, 2022

**VIA EMAIL**

Robert J. Krandel
Legal Counsel
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
Robert.Krandel@pacourts.us

    Re:    The United States' Findings and Conclusions Based on Its Investigation of the Unified Judicial System of Pennsylvania under Title II of the Americans with Disabilities Act, DJ # 204-64-170

Dear Mr. Krandel:

    The United States Department of Justice (the Department) has completed its investigation of the Unified Judicial System of Pennsylvania (UJS), under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.  The Department opened this investigation in response to complaints from two individuals alleging that the Jefferson County Court of Common Pleas, a UJS component court, ordered all probationers, including them, to stop using their prescribed medication for Opioid Use Disorder (OUD).  The Department subsequently received a complaint from an individual alleging that the Northumberland County Court of Common Pleas, another UJS component court, required her to stop using her prescribed OUD medication to graduate from drug court.

    Under Title II of the ADA, no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  The UJS and its component courts are public entities as defined by the statute.  42 U.S.C. § 12131(1); 28 C.F.R. § 35.104.  Title II authorizes the United States to investigate complaints, make findings of fact and conclusions of law, and attempt to secure voluntary compliance where violations are found.  42 U.S.C. § 12133; 28 C.F.R. pt. 35, subpt. F.

    The Department has determined that the UJS, through the actions of its component courts, violated Title II of the ADA by at times prohibiting and at other times limiting the use of disability-related medication to treat OUD by individuals under court supervision.  The county courts discriminated against the complainants in violation of the ADA by denying them an equal

opportunity to benefit from court services, programs, or activities—including probationary and treatment court[1] supervision—because of their disability.  *See* 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130(a), 35.130(b)(1).  Additionally, while investigating the Northumberland and Jefferson County Courts, we found that other county courts within the UJS have or until recently had treatment court policies that discriminate against individuals with OUD.  This letter sets forth the Department's findings of fact and conclusions of law and the minimum steps the UJS must take to meet its legal obligations and remedy the violations the Department has identified.

Medication for Opioid Use Disorder

Methadone, naltrexone, and buprenorphine (including brand names Subutex and Suboxone) are medications approved by the Food and Drug Administration to treat OUD.  According to the U.S. National Institute on Drug Abuse (NIDA), methadone and buprenorphine help diminish the effects of physical dependency on opioids, such as withdrawal symptoms and cravings, by activating the same opioid receptors in the brain targeted by prescription or illicit opioids without producing euphoria.  NIDA, *How do medications to treat opioid use disorder work?* (April 2021).[2]  Naltrexone, meanwhile, treats OUD by blocking opioid receptors and thereby preventing any opioid from producing rewarding effects such as euphoria or pain relief.  *Id.*  When taken as prescribed, these medications are safe and effective.

How long a patient receives OUD medication is tailored to the needs of each patient, and in some cases, treatment can be indefinite.  According to the U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration (SAMHSA): "OUD medication can be taken on a short- or long-term basis, including as part of medically supervised withdrawal and as maintenance treatment."  SAMHSA, *Treatment Improvement Protocol 63: Medications for Opioid Use Disorder* at ES-3 (July 2021).[3]  The best results, according to SAMHSA, "occur when a patient receives medication for as long as it provides a benefit," an approach referred to as "maintenance treatment."  *Id* at 1-8.  "OUD medication gives people the time and ability to make necessary life changes associated with long-term remission and recovery," "minimizes cravings and withdrawal symptoms," and "lets people better manage other aspects of their life, such as parenting, attending school, or working."  *Id.*

SAMHSA cautions that "patients who discontinue OUD medication generally return to illicit opioid use."  *Id.*  If a patient plans to stop use of OUD medication, SAMHSA advises that they and their providers base decisions "on knowledge of the evidence base for the use of these medications, individualized assessments, and an individualized treatment plan they

---

[1] Treatment courts, also referred to as "problem-solving courts" in Pennsylvania, focus on specific types of behaviors or conditions, often linked to crime and social problems.  The goal of these courts, which include drug, mental health, and veterans courts, "is to supervise the treatment and rehabilitation of carefully screened and selected defendants to try and change their behavior."  *See* https://www.pacourts.us/judicial-administration/court-programs/problem-solving-courts.

[2] Available at https://www.drugabuse.gov/publications/research-reports/medications-to-treat-opioid-addiction/how-do-medications-to-treat-opioid-addiction-work.

[3] Available at https://store.samhsa.gov/product/TIP-63-Medications-for-Opioid-Use-Disorder-Full-Document/PEP21-02-01-002.

2

collaboratively develop and agree upon.  Arbitrary time limits on the duration of treatment with OUD medication are inadvisable." *Id.*

Findings of Fact

> 1. *The Jefferson County Court of Common Pleas and Judge Foradora's Administrative Order*

The Honorable John Foradora is the presiding—and only—judge for the Jefferson County Court of Common Pleas.  On August 3, 2018, Judge Foradora issued an administrative order requiring all individuals under the court's supervision to be "completely clean" of any "opiate based treatment medication" within 30 days of being sentenced.  This included individuals sentenced to the court's Accelerated Rehabilitative Disposition, Probation, Parole, Intermediate Punishment, and Drug Court programs.  The only individuals exempted from the court's ban on OUD medication were pregnant probationers during their pregnancy.

On December 21, 2018, the Department wrote to Judge Foradora, asking about the court's policy denying use of medically prescribed buprenorphine or methadone.  Judge Foradora vacated his August 3 order later that day.  During the period in which the order was in place, it caused Complainants A and B significant harm.

> 2. *Complainant A*

Complainant A has a history of opioid abuse that lasted more than a decade.  She began treatment with physician-prescribed buprenorphine in 2018, and views that treatment as essential to her recovery because it removes her cravings for opioids.  Without buprenorphine, she is confident she would relapse.

In November 2018, the state transferred Complainant A's probation supervision to Jefferson County.  Complainant A's Jefferson County probation officer advised her that she was subject to Judge Foradora's administrative order and that she had 30 days—until December 30, 2018—to stop taking her prescribed OUD medication.  If she failed to do so, she would be considered in violation of her probation and sent to jail.  On top of the harmful personal impacts of being incarcerated, the Jefferson County jail does not provide OUD medication, so Complainant A would have suffered immediate withdrawal symptoms.

Complainant A attempted to comply with the court's order, despite being informed by her medical provider of the risks associated with tapering off of her medication—including relapse and death.  Complainant A's attempts to wean were difficult: she reported feeling nauseous and achy, had trouble getting out of bed, had a reduced appetite, and experienced mood swings that severely strained her personal relationships.

After Judge Foradora rescinded his order on December 21, 2018, Complainant A's physician immediately returned her to her previous dosage.  At her next medical appointment, she reported feeling "much improved" with no cravings or withdrawal symptoms.

### 3. *Complainant B*

Complainant B also has a long history of opioid abuse, and has been prescribed buprenorphine as part of her treatment for OUD. Complainant B describes buprenorphine as allowing her to be a functioning homeowner, parent, and responsible member of society. In September 2018, after facing criminal charges, she entered the Jefferson County court's Accelerated Rehabilitative Disposition program, an alternative to incarceration designed to keep first time offenders out of jail. As with Complainant A, Complainant B's Jefferson County probation officer told her that she had to stop using her OUD medication. Complainant B suffered significant withdrawal symptoms—including cramps, abdominal pain, nausea, and vomiting—which required emergency treatment on at least one occasion.

When Complainant B's initial efforts to taper were unsuccessful, Jefferson County probation referred her to an inpatient residential treatment program for the express purpose of detoxing her off her OUD medication. During her month-long stay at that facility, Complainant B suffered withdrawal symptoms including insomnia, aching legs, nausea, and stomach cramps. Complainant B never succeeded in fully stopping use of her OUD medication. Instead, after Judge Foradora rescinded his order on December 21, Complainant B quickly returned to being treated by a physician with OUD medication and has continued with such treatment ever since.

### 4. *The Northumberland County Court of Common Pleas Drug Court Program*

The Northumberland County Drug Court serves individuals with substantial but non-violent and non-sexual criminal histories and "current addiction issues." Eligible individuals may plead guilty to their criminal charges and then be sentenced to drug court instead of incarceration. Once accepted, participants must comply with various program requirements. These include submitting to frequent drug testing, engaging in treatment, and reporting regularly to the drug court and to their probation officer. To graduate from the program, participants must complete three sequential phases structured to last 18, 34, and 24 weeks, respectively. Consistent with these timelines, many successful participants graduate in less than two years.

The Honorable Paige Rosini of the Northumberland County Court of Common Pleas oversees the drug court program with the assistance of a treatment court team (hereafter, "Treatment Court Team" or "Team"). The Team includes representatives from Northumberland County's Adult Probation and Drug & Alcohol Departments and a representative from Gaudenzia, a private entity that provides treatment services to program participants. While the Team generally works to reach decisions collaboratively, Judge Rosini bears ultimate responsibility for determining who is admitted to the drug court and whether they advance, receive sanctions, or graduate.

### 5. *Complainant C*

Complainant C has a history of opioid abuse and, since at least 2016, has been prescribed buprenorphine by a physician as part of her treatment for OUD. She describes life before buprenorphine as chaotic and credits the medication with enabling her to buy a home, start her own business, and be a better parent to her young child.

In October 2016, Complainant C pleaded guilty to multiple criminal counts and was admitted to the Northumberland County Drug Court. Judge Rosini and the Treatment Court Team were concerned about Complainant C's use of buprenorphine and informed her that to continue or advance in the program she would need to stop taking her prescribed medication. The Team then took various steps to achieve this end. They sent Complainant C to an in-patient treatment rehabilitation facility to be detoxed from buprenorphine. They referred her to an abstinence-based intensive outpatient treatment provider that restricted her participation because of her OUD medication. And they significantly delayed Complainant C's progression through the successive phases of drug court because of her failure to taper off her medication, despite the fact that she otherwise satisfied the criteria for advancement and graduation.

For more than two years, the Team continued pressuring Complainant C to stop using her medication despite being informed by her doctor that Complainant C was doing well on buprenorphine and that tapering her off of it "could put her at increased risk of relapse, overdose, and death." Complainant C, meanwhile, made multiple attempts to comply with the Team's directives and experienced severe side effects as a result, including loss of appetite and energy, body aches, soreness, backpain, diarrhea, depression, and anxiety. Ultimately, Complainant C stopped trying to taper when her symptoms and opioid cravings increased to the point that she feared she would relapse.

Complainant C was finally permitted to graduate from drug court in October 2020, after spending four years in what is designed to be a less-than-two-year program. According to Team members interviewed by the Department, Complainant C spent more time in drug court than any other participant in the program's history. She is also the only participant to have graduated while taking OUD medication.

Treatment Court Team members offered no assurances to the Department that future participants who take prescribed OUD medication would be permitted to continue in or graduate from the program, saying instead that it would be a Team decision. Team members also voiced opinions rooted in stereotypes and myths about medications for OUD rather than in science. They expressed fears about how and why individuals could use or overuse their prescribed medications that displayed a misunderstanding of how the medications work. And they repeatedly suggested that they saw medication as a short-term solution for OUD, not something that could appropriately be part of an individual's treatment indefinitely.

6. *County Treatment Courts*

In addition to the above findings regarding Jefferson and Northumberland Counties, the Department's investigation found evidence that other Pennsylvania county courts have or until recently had problematic policies that prohibit or otherwise limit the use of OUD medication by individuals under court supervision. For example:

- The Allegheny County Court of Common Pleas' Mental Health Court requires court approval for OUD medication, but cautions that exceptions to their prohibition "are made only on rare occasions" and that "[i]f a regularly prescribing physician feels that a client needs to be on any prohibited prescription continuously to sustain a

5

certain quality of life, then the client may not be acceptable to participate in the Mental Health Court Program."

- The Blair County Court of Common Pleas prohibits participants in its treatment courts who have OUD from taking any OUD medication other than Vivitrol (i.e., naltrexone). It does not allow the use of other commonly prescribed medications such as methadone or buprenorphine.

- The Butler County Court of Common Pleas' Drug Treatment Court, until June 2021, stated in its publicly-available policy manual that it did not allow the use of methadone or suboxone while in the program.

- The Clinton County Court of Common Pleas' three treatment courts all restrict participants from getting OUD medication outside of that small rural county.

- The Delaware County Court of Common Pleas' policies for its three treatment courts on its website all prohibit use of "[m]aintenance drugs in any form such as Vivitrol, Subutex, Suboxone, Methadone, Buprenorphine, and Naltrexone…."

- The York County Court of Common Pleas' policies for its DUI and Mental Health Courts on its website ban the use of methadone and suboxone.

Conclusions of Law

By requiring Complainants A, B, and C to wean off of their prescribed OUD medication, the Jefferson and Northumberland County Courts of Common Pleas discriminated against the Complainants on the basis of disability and denied them an equal opportunity to benefit from UJS services, programs, or activities. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130(a), (b)(1). The bans and limitations imposed on OUD medication by other county treatment courts strongly suggest that those UJS component courts have similarly discriminated and continue to discriminate against other individuals with OUD who were or currently are under court supervision. Discriminating against a person because that person takes medication to treat a disability constitutes discrimination on the basis of disability.

The Jefferson County Court of Common Pleas denied Complainants A and B an equal opportunity to benefit from its probation program because of their disability by requiring, under threat of incarceration, that they stop taking the buprenorphine they had been legally prescribed. Complainants A and B both acted to comply with the court's requirement at great detriment to their physical and mental health.

The Northumberland County Drug Court similarly denied Complainant C an equal opportunity to benefit from its program because of her disability. The drug court denied Complainant C access to programming available to other participants, subjected her to more stringent supervision and treatment requirements, and substantially delayed her progress through the drug court program. This was despite Complainant C otherwise meeting the criteria for advancement.

The taper requirements imposed by the Jefferson and Northumberland County Courts of Common Pleas penalized the Complainants for their disabilities and were not justified by any individualized medical or security assessments. The requirements of both courts directly conflicted with prevailing medical guidance on OUD medication. Additionally, Complainant A's doctor noted that her taper put her at increased "relapse risk, including risk of death." Meanwhile, Complainant C's doctor similarly saw no medical basis for tapering her off of buprenorphine and believed that doing so "could put her at increased risk of relapse, overdose and death."

In requiring the Complainants and others to stop using buprenorphine, the Jefferson and Northumberland County Courts and other UJS component courts also violate the ADA by imposing an eligibility criterion that screens out or tends to screen out individuals with OUD, such as the Complainants, from fully and equally enjoying the courts' programs, when the criterion is not necessary for the provision of those programs. 28 C.F.R. § 35.130(b)(8). The policies requiring the Complainants to stop using buprenorphine were not necessary to ensure that they, or other individuals under the courts' supervision, achieved stability and sustainable sobriety and avoided recidivating. On the contrary, each of the Complainants' doctors had prescribed them buprenorphine because they had struggled to remain sober without the assistance of OUD medication. Their treatment experiences and needs align with medical research showing that long-term use of OUD medication minimizes cravings and withdrawal symptoms, and lets individuals better manage other aspects of their lives, including parenting, attending school, and working.

Finally, the bans and limitations on use of OUD medication imposed by the Jefferson and Northumberland County Courts, and by other UJS treatment courts, for individuals under court supervision constitute discriminatory methods of administration that violate Title II of the ADA. These bans and limitations subject qualified individuals with OUD to discrimination and impair or defeat accomplishment of the objectives of the UJS programs in which these individuals participate. 28 U.S.C. § 35.130(b)(3).

The UJS, through the discriminatory actions of its component courts, has violated and continues to violate Title II of the ADA in its treatment of individuals with OUD, including the individuals identified in this letter. To remedy these violations, and to protect the civil rights of individuals with OUD going forward, the UJS should promptly implement corrective measures, including the following:

1. Adopting or revising written policies to explicitly state that no court within the UJS may discriminate against, exclude from participation, or deny the benefits of their services, programs, or activities—including county court proceedings, probationary programs, and treatment courts—to qualified individuals with disabilities because they have OUD.

2. Identifying an ADA Coordinator responsible for monitoring court programs, training court staff, and overseeing investigations and resolutions of ADA complaints or grievances.

3. Updating the UJS's complaint process as needed to ensure that ADA-related complaints filed against any court in the UJS are promptly reviewed, investigated, and addressed by

    appropriate action, and that the results of the review are provided in a timely manner to each complainant.

4. Appropriately training and educating all court staff about OUD and the nondiscrimination requirements of Title II of the ADA.

5. Paying compensatory damages to the Complainants and other aggrieved individuals for injuries caused by the county court actions described in this letter.

6. Providing the United States with written status reports delineating all steps taken to comply with these requirements, including the date(s) on which each step was taken, and, where applicable, information sufficient to demonstrate compliance.

    We hope to work cooperatively with you to resolve the Department's findings in this matter. If the UJS declines to enter into voluntary compliance negotiations or if our negotiations are unsuccessful, the United States may take appropriate action, as described at 28 C.F.R. §§ 35.173 and 35.174. We will also share a copy of this letter with the complaining parties. A complainant may file a private suit pursuant to 42 U.S.C. § 12133, whether or not we find a violation.

    Please contact David Knight and Adam Lewis, Trial Attorneys at the Disability Rights Section of the Civil Rights Division, at david.knight@usdoj.gov and adam.lewis@usdoj.gov within seven days of receipt of this letter if the UJS is interested in working with the United States to reach an appropriate resolution along the lines described above.

    Please note that this Letter of Findings is a public document and will be posted on the Civil Rights Division's website. If you have any questions as you review this letter, please feel free to contact us.

    Sincerely,

    Rebecca B. Bond
    Chief
    Disability Rights Section

cc:    Cindy K. Chung
    United States Attorney
    Western District of Pennsylvania

    John C. Gurganus
    United States Attorney
    Middle District of Pennsylvania

    Jennifer Arbittier Williams
    United States Attorney
    Eastern District of Pennsylvania