

**U.S. Department of Justice**

Civil Rights Division

---

*Disability Rights Section*
*4 Constitution Square*
*150 M St., NE*
*Washington, DC  20530*

March 23, 2023

*Via ECF*

Hon. Mitchell S. Goldberg
U.S. District Court for the E.D. of Pennsylvania, Room 17614
601 Market Street
Philadelphia, PA 19106

      Re:    <u>United States v. Unified Judicial System of Pennsylvania</u>, No. 2:22-cv-00709-MSG (E.D. Pa.)

Dear Judge Goldberg:

      Pursuant to the Court's March 16, 2023, Order (ECF No. 23), the United States respectfully submits that the rescission of one court's administrative order does not affect the viability of the United States' claim alleging discrimination by the Unified Judicial System of Pennsylvania (UJS) against individuals in multiple judicial districts, and that the United States may seek compensatory damages for individuals harmed by the UJS's violation of Title II of the ADA.  For these additional reasons, Defendant's motion to dismiss should be denied.

1. **What is the effect, if any, of the United States' acknowledgement in paragraph 24 of the Complaint that "Judge Foradora rescinded his administrative order on December 21, 2018"?**

      The rescission of Judge Foradora's order has no effect on the viability of the United States' Complaint.  The United States alleges that the UJS has violated Title II by unlawfully discriminating against individuals with opioid use disorder (OUD) through the actions of multiple UJS courts that have limited the use of prescribed OUD medication by individuals under court supervision.  Compl. ¶ 1, ECF No. 1.  Jefferson County is only one of eight UJS courts specifically identified in the United States' Complaint as having imposed limitations on the use of OUD medication.  Compl. ¶¶ 13-58.  The rescission of Judge Foradora's order, even if it were sufficient to negate the need for injunctive relief in Jefferson County—which it is not— would not moot out or justify dismissal of the United States' claims for declaratory, injunctive, and compensatory relief to remedy the discrimination by the UJS.

      The United States' allegations, which must be taken as true on a motion to dismiss, show that the UJS has violated the ADA in its treatment of individuals with OUD inside and outside of Jefferson County, that the efforts the UJS has undertaken to halt its discrimination are insufficient, and that further relief beyond the rescission of Judge Foradora's Order is required to redress the wrongs alleged.  More specifically, the United States has alleged discrimination by

the UJS through the actions of multiple courts.  To remedy this discrimination the UJS must enact systemwide policies that ensure no UJS court discriminates against qualified individuals with disabilities because they take prescribed OUD medication.  Judge Foradora's order, applicable in only one State judicial district, is not binding on other UJS courts and is therefore insufficient to remedy the discrimination alleged.

A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)).  In instances where a defendant alleges mootness based on its voluntary cessation of allegedly wrongful behavior, the defendant bears a "heavy" and "formidable" burden of showing that: (1) there is "no reasonable expectation" the alleged violation will recur; and (2) the effects of the alleged violation have been "completely eradicated."  *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 284 (3d. Cir. 2008) (quoting *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

Judge Foradora's rescission of his administrative order is insufficient to prove mootness even as it relates solely to Jefferson County.  Courts look to the "timing and content" of a defendant's voluntary decision to cease a challenged activity in determining whether there is a reasonable expectation that the alleged violation will recur.  *Burns*, 544 F.3d at 284.  This includes examining whether the decision was "the result of substantial deliberation," and therefore is likely to be permanent and effective.  *DeJohn v. Temple Univ.*, 537 F.3d 301, 309-11 (3d. Cir. 2008); *see also United States v. Gov't Virgin Islands*, 363 F.3d 276, 279 (3d. Cir. 2004) ("[V]oluntary cessation of a challenged practice will not automatically render a case moot, unless subsequent events make it absolutely clear that the wrongful behavior will not recur.").

Here, there is no indication Judge Foradora's rescission of his administrative order was prompted by the UJS's adoption of an antidiscrimination policy prohibiting Jefferson County or other UJS courts from continuing to discriminate against individuals with OUD.  Nor is there any indication the rescission was the product of substantial deliberation or of Judge Foradora reconsidering the views regarding medication for OUD that he detailed in his original administrative order and which the United States alleges are discriminatory.  *See* Compl. ¶ 15.  If the UJS has evidence to this effect, it can raise this issue in and after discovery, when an examination of mootness can be more effectively conducted.  At this stage, based on the allegations in the Complaint, Judge Foradora's rescission, on its own, provides little assurance that the effects of his discriminatory order have been eradicated or that individuals with OUD under court supervision in Jefferson County will not face discrimination by Judge Foradora and other court personnel going forward.  And, the individuals subjected to such discrimination have not been made whole or compensated.

2. **May the federal government seek compensatory damages on behalf of individuals under 42 U.S.C. § 12133?**

Yes, the United States may seek compensatory damages on behalf of individuals under 42 U.S.C. § 12133.  Title II of the ADA provides the same remedies, rights, and procedures for persons alleging discrimination as those available under Section 504 of the Rehabilitation Act of

1973[1] and Title VI of the Civil Rights Act of 1964.[2] *Barnes v. Gorman*, 536 U.S. 181, 189 n.3 (2002).  Those remedies and rights include the right to pursue a federal administrative enforcement process that could culminate in a suit by the Attorney General.  The remedies available in such a suit are the "remedies traditionally available" to an injured party in a breach of contract suit: injunctive relief or compensatory damages. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1571 (2022) (quoting *Barnes*, 536 U.S. at 187).

The Supreme Court's application of contract law principles to the available remedies under these statutes is "informed by the way Spending Clause statutes operate: by conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Cummings*, 142 S.Ct. at 1570 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)) (internal quotation marks omitted).  In analyzing the remedies available under Title II, the Supreme Court has made clear that, regardless of the ADA's status as a "non Spending Clause" statute (unlike Section 504 and Title VI), remedies available under Title II are the same as those available under Section 504 and Title VI, given Title II's explicit incorporation of the remedies from those statutes. *Barnes*, 536 U.S. at 189, n.3.  Thus, any remedies available to the United States when a federal-funds recipient breaches its obligations under Title VI or Section 504 are similarly available when a public entity violates Title II.

Those remedies include obtaining compensatory damages on behalf of individuals. "When a federal-funds recipient violates conditions of Spending Clause legislation, the wrong done is the failure to provide what the contractual obligation requires; and that wrong is 'made good' when the recipient *compensates* the Federal Government or a third-party beneficiary (as in [*Barnes*]) for the loss caused by that failure." *Barnes*, 536 U.S. at 189 (emphasis in original).  Moreover, as *Barnes* acknowledges, a federal-funds recipient's failure to comply with funding conditions imposed by the United States under Spending Clause statutes—such as the antidiscrimination requirements of Title VI or Section 504—often inflicts harm on the intended "third-party beneficiaries" of those statutes. *Id.*

The same is true of a public entity's failure to comply with its obligations under Title II. Title II's prohibitions and enforcement provision further Congress's express intent in passing the ADA to "eliminat[e] … discrimination against individuals with disabilities," and to "ensure that the Federal Government plays a central role in enforcing the [ADA's antidiscrimination provisions] on behalf of individuals with disabilities."  42 U.S.C. § 12101(b).  Thus, it is abundantly clear when applying the contract law framework to Title II remedies—as the

---

[1] The enforcement provision for Section 504 of the Rehabilitation Act is Section 505.

[2] As discussed in the United States' Opposition to Defendant's Motion to Dismiss, Title II's enforcement section "provides" any "person alleging discrimination" with "[t]he remedies, procedures, and rights set forth in [Section 505]."  42 U.S.C. § 12133.  Section 505, in turn, specifies that persons aggrieved are entitled to the "remedies, procedures, and rights" of Title VI. 29 U.S.C. § 794a(a)(2) (citing 42 U.S.C. § 2000d *et seq.*).  Title VI provides that "[c]ompliance" with the statute may be "effected" by (1) terminating financial assistance to violators after an administrative proceeding or (2) "any other means authorized by law."  42 U.S.C. § 2000d-1. *See* U.S. Opp'n to Def.'s Mot. to Dismiss, ECF No. 21, at 20-25.

Supreme Court has instructed must be done—that individuals with disabilities who have been discriminated against by public entities are appropriately understood as intended third-party beneficiaries of Title II for whom the United States can seek relief. *Barnes*, 536 U.S. at 189.

While the United States may seek declaratory and injunctive relief to address prospective harm, in many instances adequately *redressing* the wrong done by a public entity's violation of Title II demands compensation for those harmed. In such instances, the United States may seek damages on behalf of those same individuals to compensate them and return them, as best as possible, to "as good a position" as they would have been in had they not been discriminated against. *See Barnes*, 536 U.S. at 189 (quoting *Guardians Ass'n v. Civ. Serv. Comm'n of N.Y.C.*, 463 U.S. 582, 633 (1983) (Marshall, J., dissenting)). *See also United States v. Marion Cnty. Sch. Dist.,* 625 F.2d 607, 617 (5th Cir. 1980) ("[T]he United States is entitled to sue to enforce contractual assurances of compliance with Title VI's prohibition against discrimination in the operation of federally-funded schools, and … is entitled to whatever relief is necessary to enforce such assurances….").

Consistent with the above analysis, Title II's implementing regulations contemplate that the designated federal agency (here, the Department of Justice) will issue a Letter of Findings specifying the remedies for each violation, including "compensatory damages where appropriate"; attempt to obtain voluntary compliance from the public entity; and then refer the matter to the Attorney General for "appropriate action" if the public entity declines. 28 C.F.R. §§ 35.172(c)(2), 35.173, 35.174. No court has ever ruled that the United States lacks authority to seek compensatory damages on behalf of individuals under Title II, Section 504, or Title VI. Indeed, the United States' authority to seek such damages has been widely acknowledged and accepted by courts and respondents in consent decrees and settlement agreements—into which the United States has routinely entered—that provide compensatory damages to individuals.[3] Under Title II of the ADA, courts have entered at least three such consent decrees.[4] And federal agencies routinely enter settlement agreements to resolve complaints through the Title II and Section 504 administrative enforcement processes that secure individualized relief—both monetary and equitable. The United States has entered at least thirty-three such settlements.[5]

---

[3] Additionally, at least one court has awarded compensatory damages to an individual with a disability in a suit brought by the United States under Section 504. *United States v. Bd. of Trs. for Univ. of Al.*, No. 86-c-1779-S, Final J. and Permanent Inj. at 30 (N.D. Al., Dec. 30, 1988). In that case, the United States filed suit after receiving a complaint by a deaf student regarding the University of Alabama's provision of auxiliary aids and services. On appeal, the Eleventh Circuit did not disturb the district court's order requiring the University to reimburse one deaf student for money they spent on interpreter services. *United States v. Bd. of Trs. for Univ. of Al.,* 908 F.2d 740, 744 (11th Cir. 1990).

[4] *See United States v. Minn. Dep't of Corrs.*, No. 23-cv-367 (D. Minn., Mar. 7, 2023), https://perma.cc/79Z9-J6Q6; *Dudley v. Mia. Univ.*, No. 1:14-cv-38 (S.D. Oh., Dec. 14, 2016), https://perma.cc/MLV9-E4NS; *United States v. City of Ocean Springs, Miss.*, 1:14-cv-430 (S.D. Miss., Nov. 26, 2014), https://perma.cc/S7T2-3VNW.

[5] The United States has similarly entered consent decrees and settlement agreements to resolve investigations and lawsuits brought under Title VI that provide compensatory damages to

The Department's longstanding enforcement efforts are all the more significant given Congress's acquiescence in the exercise of that federal authority. In 2008, Congress amended the ADA but did not amend Title II's enforcement provision, 42 U.S.C. § 12133. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-240 (2009) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)); accord *Phillip C. v. Jefferson Cty. Bd. of Educ.*, 701 F.3d 691, 696-697 (11th Cir. 2012), cert. denied, 134 S. Ct. 64 (2013). Congress was aware by 2008 that: (1) the Title II regulations had long provided that compensatory damages were an appropriate remedy for individuals, *see* 28 C.F.R. § 35.172(c)(2); and (2) the Attorney General had acted on that authority by undertaking numerous enforcement activities under Title II.[6]

For all of the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motion to dismiss.

Respectfully submitted,

REBECCA B. BOND, Chief

*/s/ David W. Knight*
KEVIN J. KIJEWSKI, Deputy Chief
DAVID W. KNIGHT
ADAM F. LEWIS
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice

JACQUELINE C. ROMERO
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

MICHAEL J. BUTLER
LAUREN DeBRUICKER
Assistant United States Attorneys

---

individuals. Most of the settlement agreements and consent decrees that the United States has entered into under Title II and Title VI are available on ada.gov and justice.gov/crt. The United States can also provide a specific list of direct links to the Court upon request.

[6] The United States entered into more than a half dozen Title II settlement agreements prior to the passage of the ADA Amendments Act that included compensatory damages in some form.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on March 23, 2023, he personally caused to be served upon the following a true and correct copy of the foregoing letter, via ECF to:

Robert J. Krandel
Geri R. St. Joseph
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, IA  19102

*Counsel for the Unified Judicial System of Pennsylvania*

Dated: <u>March 23, 2023</u>              <u>*/s/ David W. Knight*         </u>
DAVID W. KNIGHT
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, D.C. 20530

*Counsel for the United States*