

Supreme Court of Pennsylvania
ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS
1515 Market Street, Suite 1414
Philadelphia, PA 19102
(215) 560-6300
www.pacourts.us

March 23, 2023

Hon. Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
United States Courthouse, Room 17614
601 Market Street
Philadelphia, PA  19106

Re:   *U.S. v. U.J.S.*, No. 22-cv-00709 (E.D. Pa.)

Dear Judge Goldberg,

This letter brief for the Unified Judicial System (or the UJS) responds to the Court's March 2023 Order directing the parties to address two issues.

I.

The first issue framed by the Court is: *What is the effect, if any, of the United States' acknowledgment in paragraph 24 of the Complaint that "Judge Foradora rescinded his administrative order on December 21, 2018?"*

President Judge Foradora of the Court of Common Pleas for Jefferson County issued an order in August 2018 prohibiting offenders under court supervision suffering from opioid use disorder from benefitting from medicine-assisted treatment. According to the United States, this order was discriminatory and thus violated Title II of the Americans with Disabilities Act, and the order caused injury to complainants.  *See* Complaint at ¶¶ 9-24.  The United States admitted that Judge Foradora's short-lived directive was rescinded in December 2018—over three years before the federal government's complaint was filed in February 2022.

Judge Goldberg
*U.S. v. U.J.S.*, 22-cv-709
March 23, 2023
Page 2

    Indirectly, the order's rescission highlights that the United States premises its complaint on isolated county-level incidents and stale information to bolster its misdirected attempt to impugn an entire statewide judicial system based on a few alleged local infractions. *See* UJS Brief at 2, 8-20. From the systemic level, however, in addition to enforcing appellate remedies, the UJS has implemented robust policies to prohibit and police discrimination. These measures encompass as much systemic monitoring and remediation as possible through the Administrative Office of Pennsylvania Courts, *see id.* at 12 (referencing Pa.R.J.A. 505(6)), as well as a readily available complaint-and-review procedure, *see id.* at 18-19 (discussing Pa.R.J.A. 250, 252). Indeed, the transience of Judge Foradora's order should be viewed as more of a credit to the larger state system of justice unjustifiably targeted by the federal government rather than as a failing.

    Significantly, the United States does not claim that any of the present complainants attempted to access any of the remedies made available to them by the UJS. And the federal government hasn't identified a single offender currently under court supervision who is actively being subject to discrimination based on opioid use disorder. In these circumstances, the United States' decision to sue a state system of justice raised troubling concerns about its respect for federalism. *See* UJS Brief at 17-20.

    Of more direct relevance, the United States' admission that Judge Foradora rescinded his administrative order in December 2018 establishes that the United States' claim is untimely. *See* UJS Brief at 23-24. In effect, the federal government has conceded that the last possible date of accrual of the derivative cause of action advanced on the part of offenders subject to Judge Foradora's order is more than three years before the complaint was filed.

    Thus, under both the defendant's position that a two-year statute of limitations applies, *see* UJS Brief at 23, as well as the United States' argument that a three-year statute pertains, *see* U.S. Brief at 17, when the federal government filed its complaint in February 2022, the limitations period had already expired. Although the United States invokes the discovery rule in a conclusory fashion, the federal government has presented no factual predicate to which the discovery principle could plausibly apply. In this vein, the United States does not claim—nor could it credibly claim—that Judge Foradora's publicly posted order was not readily available to be viewed by the federal government or any complainant from the time it was docketed and afterward. Simply put, there was never any latent information here to be discovered.

## II.

The second issue framed by the Court is: *May the federal government seek compensatory damages on behalf of individuals under 42 U.S.C. § 12133?*

Where Congress wants the United States to have special authority to prosecute a claim on behalf of individual persons, it makes that authority clear. For example, the Uniformed Services Employment and Reemployment Rights Act prescribes that "the Attorney General may appear on behalf of, and act as attorney for, the person on whose behalf the complaint is submitted and commence an action for relief under this chapter for such person." 38 U.S.C. § 4323(a); *see also U.S. v. Fla. AHCA*, 21 F.4th 730, 753 (11th Cir. 2021) (Newsom, J., dissenting to the denial of reargument) (discussing three other examples). But Congress did nothing of the sort in Title II of the ADA.

What's more, Title II, via Section 12133, provides remedies only to "*any person* alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added). And the United States does not dispute—nor could the federal government reasonably dispute—that the sovereign is not a person. *See* UJS Brief at 5-7 (citing *Return Mail, Inc. v. USPS*, 139 S. Ct. 1853, 1861-62 (2019)); *see also* U.S. Brief at 23 n.14 (remonstrating only that the established proposition that the sovereign is a not a person is ostensibly "beside the point" without in any way challenging the precept's validity).

Whereas Titles I and III of the ADA explicitly confer remedial enforcement authority on the Attorney General, Title II's Section 12133 affords no such power to the United States or any of its instrumentalities. *See* UJS Brief at 6. And since the sovereign is not a person, *Return Mail*, 139 S. Ct. at 1861-62, the federal government has no standing to state a cause of action under Title II. *See* UJS Brief at 5-8; *see also Russello v. U.S.*, 464 U.S. 16, 23 (1983) (explaining that, where "Congress includes particular language in one section of a statute[, as with its use of "Attorney General" in Titles I and III of the ADA,] but omits it in another section of the same Act [*e.g.*, Title II of the ADA], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)).

To counter this firmly grounded application of longstanding principles of statutory interpretation, the United States highlights a decision of the U.S. Court of Appeals for the Eleventh Circuit that is "anything but straightforward." *Government Standing: The United States*, 13B Fed. Prac. & Proc. Juris. § 3531.11 (3d ed. 2023) (referencing *U.S. v. Fla.*, 938 F.3d 1221

(11th Cir. 2019), *reh'g denied sub nom. U.S. v. Fla. AHCA*, 21 F.4th 730, *cert. denied*, 143 S. Ct. 89 (2022)). In this lengthy opinion, the Eleventh Circuit relies on a "cascade of cross-references" to conclude that Congress had obliquely granted the Attorney General the power to state a cause of action under Title II of the ADA. *U.S. v. Fla.*, 938 F.3d at 1225-46.

The dissenting position, however, is "much more succinct" in concluding that "the Title II authorization of remedies for 'any person alleging discrimination' does not include public enforcement—'person' does not include the sovereign." *Government Standing*, 13B Fed. Prac. & Proc. Juris. § 3531.11 (referencing *U.S. v. Fla.*, 938 F.3d at 1250-54 (Branch, J., dissenting)).

Not only is the dissent in *United States v. Florida* much more succinct but also it is also eminently correct under the law of *this* Circuit. *See, e.g., S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013) (explaining that the plain meaning of an enactment is the best indicator of Congressional intent, and that reviewing courts decidedly should not go to great lengths to divine intent when the words of the subject enactment are straightforward).

The Eleventh Circuit's convoluted analysis spans "dozens of pages untangling the cross-reference cascade." *Fla. AHCA*, 21 F.4th at 748 (Newsom, J., dissenting to the denial of reargument). Ultimately, the circuit court relied on Title II's incorporation of Spending Clause remedies ordinarily grounded in contract principles and otherwise requiring a "federal-funding hook." *U.S v. Fla.*, 938 F.3d at 1244-45.

But as Judge Newsom explained in the dissent to the denial of reargument, if Congress had wished to expand the scope of the United States' remedial powers in Title II of the ADA beyond at most the contract-specific remedies which Congress had cross-referenced, Congress could have easily said so via an explicit grant of authority. *See Fla. AHCA*, 21 F.4th at 751-53 (Newsom, J., dissenting); *accord Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132 (1995) ("[W]hen an agency in its governmental capacity is meant to have standing [to sue], Congress says so."); *cf. Sossamon v. Texas*, 563 U.S. 277, 290 (2011) ("We have not relied on the Spending Clause contract analogy to expand liability beyond what would exist under nonspending statutes.").

Congress did not say so, however. Instead, Congress deliberately excluded the United States from Section 12133's conferral of remedial enforcement powers under Title II. As Judge Newsom also explained, this approach likely

reflects the strong federalism concerns that arise under Title II of the ADA given that—in contrast to Titles I and III which principally regulate private entities—Title II regulates state and local governmental units. *See Fla. AHCA*, 21 F.4th at 757-58 (Newsom, J., dissenting) ("[A]though the federal government holds the upper hand, the wielding of its federal power against the states cannot be taken lightly or casually inferred."); *accord* UJS Brief at 17-20. Importantly, Congress must be clear when it wishes to alter the traditional federal-state balance. *See Bond v. U.S.*, 572 U.S. 844, 857, 860 (2014).

By reference to Title III of the ADA, the United States squarely concedes that an *expansion* of the Attorney General's enforcement authority requires explicit Congressional specification: "Congress could not have granted the Attorney General . . . expanded authority in Title III *without specifically mentioning him*." U.S. Brief at 24 (emphasis added). Yet the United States inconsistently claims that Congress gave the Attorney General expanded authority in Title II's Section 12133—*i.e.*, enforcement authority exceeding the well-established Spending Clause nexus—*without mentioning him*.

This flaw in the United States' arguments reinforces the soundness of adhering to settled principles of statutory construction, including the axiom requiring the courts to adhere to the plain language of a statute: here, Section's 12133's straightforward affordance of remedies to only a "person" and not the sovereign.

Thank you for the opportunity to offer clarification.

Respectfully yours,

GERI ROMANELLO ST. JOSEPH
Counsel to the Unified Judicial System