

**U.S. Department of Justice**

Civil Rights Division

---

*Disability Rights Section*
*4 Constitution Square*
*150 M St., NE*
*Washington, DC  20530*

June 12, 2023

Hon. Mitchell S. Goldberg
U.S. District Court for the Eastern District of Pennsylvania
601 Market Street, Room 17614
Philadelphia, PA  19106

      Re:    United States v. Unified Judicial System of Pennsylvania, et al., No. 2:22-cv-00709-MSG (E.D. Pa.)

Dear Judge Goldberg:

      On April 30, 2021, the Unified Judicial System of Pennsylvania (UJS) admitted that the Blair County Court of Common Pleas categorically prohibited individuals under supervision from taking methadone or buprenorphine to treat opioid use disorder (OUD).  Am. Compl. ("AC") ¶ 31, ECF No. 28.  Six months later, Blair County enforced this policy against Complainant D and ordered him to stop taking his prescribed buprenorphine.  *Id.* ¶¶ 38-39.  He spent Thanksgiving in forced inpatient treatment, away from his family, vomiting, twitching, and feeling like he wanted to die.  *Id.* ¶ 40.  The UJS could have prevented the harm done to Complainant D by one of its courts.  *Id.* ¶¶ 11-12, 138-39.  Instead, it did nothing.  *Id.* ¶ 143.

      On February 2, 2022, the UJS was notified of discriminatory administrative policies in Blair County and at least seven other UJS Courts.  *Id.* ¶ 145.  It responded on February 23, 2022, with assurances like those in its current letter—that it had implemented "robust, systemwide policies and practices" that ensure its courts comply with the ADA's requirements.  UJS Ltr. 2, ECF No. 30.  Only five days earlier, however, another UJS Court, the Luzerne County Court of Common Pleas, had adopted new treatment court policies categorically prohibiting participants from taking buprenorphine or methadone.  AC ¶ 132.  And approximately one month later—after this suit had been filed, after the UJS had been repeatedly put on notice of discrimination by its courts, and after the UJS had assured the United States that such discrimination was not occurring—another UJS Court, the Berks County Drug Treatment Court, issued a revised policy that continued to categorically prohibit the use of methadone and buprenorphine.  *Id.* ¶¶ 123-24.

      The UJS's efforts to ensure that its courts do not discriminate against individuals with OUD are plainly inadequate[1] and have allowed the discrimination alleged to persist and spread.

---

[1] The UJS's focus on its "accommodation-and-grievance procedure" also misses the point.  A person with a disability is not required to request a modification to a policy that facially discriminates against them because of their disability.  *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 305 (3d Cir. 2007) (holding that plaintiffs bringing Title II claim were not required to request a reasonable modification to a facially discriminatory ordinance).

The United States' first complaint identified eight UJS Courts that have or recently had administrative policies categorically restricting the use of OUD medication. The Amended Complaint now identifies eleven such UJS Courts. As noted, Luzerne and Berks Counties recently adopted policies that are facially discriminatory. UJS Courts in Allegheny, Clinton, Delaware, and Lackawanna Counties continue to have policies that categorically limit access to OUD medication. *Id.* ¶¶ 55, 120-21, 128, 130. Blair County did not revise its expressly discriminatory policy until four months after the filing of this lawsuit and, even then, did so begrudgingly while its Drug Court personnel continue as a matter of policy and practice to pressure participants to ultimately wean off OUD medication. *Id.* ¶¶ 32-34. To the extent UJS Courts in Jefferson, Northumberland, Butler, or York Counties have rescinded their expressly discriminatory policies, they have not taken steps to ensure such changes are permanent or that court personnel do not continue to discriminate against individuals who take OUD medication as a matter of unwritten policy or practice. *Id.* ¶¶ 69, 117, 136, 145, 148.

The enforcement of these policies has had dire consequences. Individuals who use opioids are much more likely to be arrested and to end up under court supervision. *Id.* ¶ 25. In the eleven UJS Courts identified, there are tens of thousands of individuals under court supervision, many for drug law violations. *Id.* ¶¶ 149-51. It is therefore highly likely that many other individuals with OUD have been impacted by the categorical application of the discriminatory administrative policies at issue. *Id.* ¶¶ 149-56. And the UJS has provided no basis on which to conclude at the motion to dismiss stage that the policies in counties where specific individuals have not yet been identified—many of which remain publicly posted on county court websites more than a year after the initiation of this lawsuit—are not actually being applied to the supervision programs and individuals that they cover. Indeed, the Amended Complaint identifies three new aggrieved individuals, two of whom were subject to the facially discriminatory Blair County policy identified in the initial complaint. AC ¶¶ 36-51, 57-65.[2]

Despite its vague assertions that it is not the unified entity the Pennsylvania Constitution expressly says it is, Pa. Const. art. V, § 1, the UJS is responsible for the harm caused by the discriminatory administrative policies of its courts. "Generally, the proper defendant for a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity." *See Miller v. Little*, No. 22-cv-4264, 2023 WL 3674336, at *8-9 (E.D. Pa. May 25, 2023) (permitting inmate to proceed with Title II claim against the Pennsylvania Department of Corrections asserting denial of reasonable accommodations by personnel at only one of 23 state correctional institutions). Here, that entity is the UJS as led by the Supreme Court of Pennsylvania. Pa. Const. art. V, §§ 1, 2, 10. The UJS effectively admits as much in footnote 4 of its letter where it again touts its role prescribing rules aimed at preventing disability-based discrimination that are "applicable to courts throughout the Commonwealth." UJS Ltr. 2 n.4.

The history of *Geness* also supports that the UJS is a proper defendant to this suit. The Third Circuit's affirmance of the dismissal of Geness' claim against the Administrative Office of

---

[2] Complainant E, like Complainant D, was ordered off his prescribed buprenorphine by Blair County, enduring a painful withdrawal and then suffering multiple relapses. AC ¶¶ 46, 48-51. Complainant F was charged with a probation violation in Lackawanna County for taking his prescribed buprenorphine then sent to jail and in-patient treatment. *Id.* ¶¶ 63-65. During discovery, the United States expects to identify additional aggrieved individuals in other counties that have facially discriminatory policies and practices.

Pennsylvania Courts in *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263 (3d Cir. 2020), followed that court's 2018 determination that Geness had sufficiently stated a Title II claim against the Commonwealth of Pennsylvania based in part on the conduct of Fayette County judges. *See Geness v. Cox*, 902 F.3d 344, 360-65 (3d Cir. 2018). Following the 2020 remand, the District Court found that the Commonwealth not only could be held vicariously liable for the conduct of its county judges, but that it had violated Title II when a Fayette County judge committed Geness to a long-term structured release program for an indefinite period. *Geness v. Pennsylvania*, 503 F.Supp.3d 318, 339-344 (W.D. Pa. 2020). Given that the Commonwealth was a proper defendant for Geness' Title II claim based on the actions of one county court, it would make little sense to adopt the UJS's argument here that the UJS—the entity best suited to remedy the alleged discrimination—somehow stands in a more "remote posture" relative to its own courts than the Commonwealth, such that it cannot be held liable for their discriminatory policies.

In its dismissal order, the Court found the United States only plausibly alleged a possible ADA violation by the UJS Court in Jefferson County. The Amended Complaint remedies the deficiencies in the United States' allegations that led to that conclusion. It makes clear that Complainant C was subjected to a categorical administrative policy enforced by the Northumberland County Drug Court, not an individual exercise of judicial discretion. AC ¶¶ 91-97, 104-05. It identifies three additional victims in two additional UJS Courts, Blair and Lackawanna Counties, and two more UJS Courts that have adopted policies limiting the use of OUD medication. It demonstrates that large numbers of people with OUD have likely been harmed by the facially discriminatory policies at issue. It highlights the UJS's awareness that its courts are implementing these policies and its responsibility and persistent failure to correct them. And, finally, it acknowledges that appropriate injunctive relief will be tailored to the scope of the violation established.

The UJS demands credit for its efforts to ensure its courts comply with the ADA. Compliance with Federal civil right statutes is measured by outcome, not effort. By that measure, the UJS has fallen well short of compliance as its courts continue to discriminate against individuals under supervision who take OUD medication.[3] For all of the above reasons, the United States respectfully requests that the Court reject the UJS's proffered arguments and encourage an efficient resolution of this matter that conserves the resources of the parties and the Court.

Sincerely,

/s/ David W. Knight
DAVID W. KNIGHT
ADAM F. LEWIS
Counsel for the United States

---

[3] As for the UJS's other arguments, the United States incorporates by reference its arguments in prior briefing that: (1) it has authority to file suit to enforce Title II, U.S. Opp'n to Mot. to Dismiss 19-25, ECF No. 21; AC ¶¶ 8, 17; (2) it has adequately pleaded and satisfied all conditions precedent, Opp'n 15-16; AC ¶ 159; (3) its claim is not time barred, Opp'n 17-19; and (4) the UJS retains no sovereign immunity against the Federal Government, *id.* 14-15. Lastly, venue is proper as it pertains to the UJS because the UJS resides in the Eastern District and a substantial part of the events and omissions giving rise to the claim occurred here. AC ¶ 9.

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on June 12, 2023, he personally caused to be served upon the following a true and correct copy of the foregoing letter, via ECF to:

Robert J. Krandel, Esq.
Geri R. St. Joseph, Esq.
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

*Counsel for Defendant*

Dated:  June 12, 2023

/s/ David W. Knight
DAVID W. KNIGHT
ADAM F. LEWIS
Civil Rights Division
Disability Rights Section
USAO Program Coordinators
950 Pennsylvania Avenue, NW
4-CON
Washington, DC  20530

*Counsel for the United States*