**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No.  22-cv-00709 |
| v. | : | |
| | : | |
| THE UNIFIED JUDICIAL SYSTEM | : | |
| OF PENNSYLVANIA, THE SUPREME COURT | : | |
| OF PENNSYLVANIA, and the BLAIR, | : | |
| LACKAWANNA, JEFFERSON and | : | |
| NORTHUMBERLAND COUNTY | : | |
| COURTS OF COMMON PLEAS, | : | |
| | : | |
| *Defendants* | : | |

**DEFENDANTS' MOTION TO DISMISS
THE UNITED STATES OF AMERICA'S COMPLAINT**

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the Pennsylvania Unified

Judicial System, the Supreme Court of Pennsylvania, the Blair County Court of Common Pleas,

the Lackawanna County Court of Common Pleas, the Jefferson County Court of Common Pleas,

and the Northumberland County Court of Common Pleas through their undersigned counsel,

respectfully submit this motion to dismiss the above-captioned amended complaint filed by the

United States of America.  For the reasons more fully set forth in the accompanying Brief, which

1

is fully incorporated herein by reference, the amended complaint should be dismissed.

Respectfully submitted,

**/s/Robert J. Krandel**
ROBERT J. KRANDEL
Attorney I.D. No. PA89485
GERI ROMANELLO ST. JOSEPH
Attorney I.D. No. PA84902
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

***Counsel for Defendants***

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No. 22-cv-00709 |
| v. | : | |
| | : | |
| THE UNIFIED JUDICIAL SYSTEM | : | |
| OF PENNSYLVANIA, THE SUPREME COURT | : | |
| OF PENNSYLVANIA, and the BLAIR, | : | |
| LACKAWANNA, JEFFERSON and | : | |
| NORTHUMBERLAND COUNTY | : | |
| COURTS OF COMMON PLEAS, | : | |
| | : | |
| *Defendants* | : | |

**BRIEF OF THE DEFENDANTS IN SUPPORT OF THEIR MOTION
TO DISMISS THE AMENDED COMPLAINT**

The defendants respectfully submit this brief in support of their motion to dismiss the amended complaint in this case arising under the Title II of the Americans with Disabilities Act.

## I.   INTRODUCTION

This Court recently explained why the original complaint filed by the United States, through its Department of Justice (the "DOJ" or the "Department") was dismissed for failing to state a claim against the Pennsylvania Unified Judicial System (the "UJS"). Although the DOJ subsequently filed an amended complaint adding more defendants, the same deficiencies, amongst others, again require dismissal.

As a threshold matter, the DOJ still is not a person. And Congress only authorized suits by a "person" under Title II. Per the plain text, the Department continues to lack standing.

Beyond that, the DOJ persists with its attempt to construct a case against a state judicial system at large and now the system's head—the Supreme Court of Pennsylvania—from the bottom

1

up.  That is, the Department claims an entire judicial system and its leader are liable for alleged discriminatory conduct perpetrated at the county-court level in a few judicial districts.

The DOJ's liability theories run roughshod over explicit statutory guardrails, longstanding canons of statutory interpretation, and essential principles of federalism.  And once the UJS and the Supreme Court are removed as defendants, the amended complaint alleges only discrimination by local courts occurring entirely outside the Eastern District of Pennsylvania.  Furthermore, the amended complaint seeks supervisory forms of relief against state courts well beyond the sphere of what federal courts are willing to entertain.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In the original complaint, the United States alleged that "eight of Pennsylvania's [sixty] courts of common pleas implemented blanket policies that either severely limited or completely prohibited the use of [opioid use disorder] medications by participants in treatment courts." Memorandum Opinion, ECF No. 26, at 3-4.[1]  The cause of action advanced there, lodged only against the UJS at large, was premised on the singular theory that the entire Pennsylvania judicial system bears liability for violations of law by any component of that system.[2]

This Court, however, deemed the allegations of discriminatory practices by a "small number of Pennsylvania county courts" to be insufficient to suggest systemwide liability. Memorandum Opinion, ECF No. 26, at 1.  Also, written policies identified by the United States had been rescinded, thus depriving the DOJ of standing to pursue injunctive relief.  *See id.* at 13. The broader allegations of the United States implicating other county courts were simply "too

---

[1] The defendants will refer to forms of medicine-assisted treatment used for opioid use disorder as "MATs."

[2] *See* Complaint, ECF No. 1, at 10-11 ¶ 61 ("Defendant UJS, *through the acts and omissions of its component courts* has . . . violated Title II of the ADA . . ." (emphasis added)).

vague to state a claim." *Id.* at 13-14.  And the Department's formulation of its component-courts theory of systemwide liability for alleged violations by local courts was entirely standardless.[3]

Importantly, the Court regarded DOJ's averments as entailing only challenges to judicial decision-making in individual cases. *See id.* at 12.  Thus, under *Geness v. AOPC*, 974 F.3d 263 (3d Cir. 2020), state-court-related administrative entities couldn't be held liable for such judicial decisions. *See id.* at 9-10 (explaining that the state-level administrative office was not "a judicial back-seat driver") (quoting *Geness*, 974 F.3d at 277).  And, while the procedural posture of *Geness* was "slightly different"—in that the plaintiff sued AOPC rather than the UJS—"the general concerns about premising an administrative entity's liability on judicial decision-making are equally applicable to the UJS." *Id.* at 11.

In attempting to correct these deficiencies, the DOJ now supplements its component-courts theory with a supervisory-liability theory premised on claims of wrongful supervisory omissions by the UJS.  *See* Amended Complaint, ECF No. 28, at 32-33 ¶ 160(a)-(c) (accusing the UJS of "failing to prevent" discrimination at the local level).  The amended complaint adds the Supreme Court of Pennsylvania as a defendant on the same basis. *See id.* at 33 ¶¶ 161-163.  As this theory goes, because the state Constitution invests the Supreme Court with authority to supervise the county courts, *see* Pa. Const., art. V ¶ 10(c), that Court must answer for every violation by the local courts on vicarious liability principles.

The DOJ has also supplemented its claims by identifying two new complainants in Blair County, *see id.* at 10-11 ¶¶ 36-51, and a third one in Lackawanna County, *see id.* at 14-15 ¶¶ 57-65.  Further, the amended complaint increases from six to seven the number of county courts

---

[3] *See id.* at 14 ("The DOJ does not identify a standard for when a judicial system may be held liable for acts of its component courts.").

against which non-specific allegations of discrimination are made.  *See, e.g.*, *id.* at 31-32 ¶¶ 149-156.  Finally, in addition to naming the Supreme Court of Pennsylvania as a defendant, the United States now also names four judicial districts. *See id.* at 35-36 ¶ 164.

III.    ISSUES

A.    **DO THE DOJ'S BOTTOM-UP THEORIES OF SYSTEMWIDE AND SYSTEM-LEADER LIABILITY VIOLATE FEDERALISM NORMS AND INTRUDE ON STATE SOVEREIGNTY?**

   **Suggested answer:  Yes**

B.    **WHERE THE TEXT OF TITLE II OF THE ADA PROVIDES ENFORCEMENT AUTHORITY SOLELY TO "ANY PERSON" ALLEGING DISCRIMINATION ON THE BASIS OF A DISABILITY, DOES THE DOJ – WHICH IS NOT A PERSON – HAVE STANDING TO PURSUE THOSE REMEDIES?**

   **Suggested answer:  No**

C.    **DO THE UJS AND THE SUPREME COURT OF PENNSYLVANIA ENJOY ELEVENTH AMENDMENT IMMUNITY RELATIVE TO BOTTOM-UP LIABILITY THEORIES?**

   **Suggested answer:  Yes**

D.    **IS THERE ANY BASIS IN LAW TO SUPPORT SYSTEMWIDE AND SYSTEM-LEADER LIABILITY UNDER THE DEPARTMENT'S COMPONENT-COURTS, SUPERVISORY LIABILITY, OR VICARIOUS LIABLITY THEORIES?**

   **Suggested answer:  No**

E.    **HAS THE UNITED STATES FAILED TO PLEAD, AS REQUIRED, THAT COMPLIANCE CANNOT BE SECURED BY VOLUNTARY MEANS?**

   **Suggested answer:  Yes**

F.    **ARE THE CLAIMS PREMISED ON THE ADMINISTRATIVE ORDER OF THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY UNTIMELY?**

   **Suggested answer:  Yes**

G.    **SHOULD THE COURT DISMISS THE PRESENT CASE FOR IMPROPER VENUE OR ABSTAIN FROM ANY FURTHER REVIEW?**

   **Suggested answer:  Yes**

IV.     **RULE 12(b)(6) REVIEW PRINCIPLE**

This Court set forth the general principles governing its review of a motion to dismiss in its Order dismissing the United States' original complaint.  *See* ECF No. 26, at 7.  The central analysis distills to determining whether the complaint's well-pleaded allegations state a claim for relief.  *See, e.g.*, *Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 n.2 (3d Cir. 2019).

V.      **ARGUMENT**

    A.      **THE DOJ'S BOTTOM-UP THEORIES OF SYSTEMWIDE AND SYSTEM LEADER LIABILITY VIOLATE FEDERALISM NORMS AND INTRUDE ON STATE SOVEREIGNTY.**

Throughout these proceedings, the DOJ has consistently downplayed the federalism dynamic pervading this federal-versus-state litigation.  But the concern for state sovereignty could hardly be starker now that a federal executive agency has chosen to attack the state's high court using a novel, bottom-up liability theory.  *See generally Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018) (explaining that the U.S. Constitution retained "a residuary and inviolable sovereignty" in the States) (quoting The Federalist No. 39, at 245 (J. Madison) (C. Rossiter ed. 1961)).

For example, the DOJ now claims the Supreme Court of Pennsylvania has failed to properly exercise the supervisory authority over a state judicial system.  *See* Amended Complaint, ECF No. 28, at 29, 34-35 ¶¶ 146, 163.  The Supreme Court's supervisory authority, however, is invested squarely within that Court's own sound discretion by the Pennsylvania Constitution.  *See* Pa. Const. art. V § 10(c).  And, importantly, there is no colorable claim of systemwide discrimination in this case.  Instead, the only asserted violation is the claimed failure to prevent discrimination by some county courts.  *See* Amended Complaint, ECF No. 28, at 29, 34-35 ¶¶ 146, 163.  As the remedy, the Department seeks a federal-court order directing the state Supreme Court

to exercise that Court's own state-constitutionally-prescribed supervisory authority over those county courts in a federally prescribed manner.  See *id.* at 36-37, Prayer for Relief ¶¶ C-F.

As related in other parts of this brief, the DOJ's bottom-up, systemwide and system-leader liability theories are not supported by the text of Title II of the ADA (or by any other statute or common-law principle for that matter).  For present purposes, however, the defendants wish to stress the untenable implications of federal instrumentalization of a state constitution as envisioned by the Department.  In other words, the Department has no business telling the Supreme Court of Pennsylvania what its supervisory duties are under the Pennsylvania Constitution or how that Court's authority under its own state charter should be exercised.

To the contrary, it is a "fundamental" principle of federalism "that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions."[4]  For this reason alone, this Court should roundly reject the Department's bottom-up attempt to wrest away from the Pennsylvania Supreme Court its sovereign rights both to interpret the scope of its supervisory authority and to implement that authority within its own sound discretion.  Again, according to the state Constitution, the Pennsylvania Supreme Court alone must attend to the vast scope and scale of its supervisory responsibilities over the entire UJS.  *See* Pa. Const., art. V § 10(c).

---

[4] *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 78 (2000) (quoting *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940)); *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 488 (1976) ("We are, of course, bound to accept the interpretation of [state] law by the highest court of the State."); *Proprietors of the Charles River Bridge v. Proprietors of the Warren Bridge*, 36 U.S. 11 Pet. 420, 510 (1837) ("The laws and constitutions of the states belong solely to the state courts to expound."); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995) (explaining that a federal court deciding state constitutional law claims "disregards principles of federalism; it ignores the superiority of state-court forums for state-law claims and denigrates the state's authority to fashion independent constitutional law."), *overruled on other grounds by Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998).

The federal courts' concern for the dignity and separate-sovereign status of state governments also powers a litany of other substantive principles and interpretive rules that favor outright dismissal of the amended complaint.  On the substantive end of the spectrum, for instance, it is axiomatic that, under the U.S. Constitution, Congress lacks the authority to commandeer the processes of states "by directly compelling them to enact and enforce a federal regulatory program." *New York v. United States,* 505 U.S. 144, 161 (1992) (quotation omitted).  And, in the litigation arena, federal courts strongly disfavor the type of systemwide relief contemplated by the Department.  In this vein, it is error for a federal court to "impose[ ] a systemwide remedy going beyond [the] scope" of the specific violations established.  *Lewis v. Casey*, 518 U.S. 343, 359 (1996) (quoting *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 417 (1977)).

As for principles of statutory interpretation, the Supreme Court of the United States has announced several "clear-statement rules" of statutory interpretation to protect state sovereignty against federal intrusions.  *See generally Jones v. Hendrix*, No. 21-857, 2023 WL 4110233, at *3 (U.S. June 22, 2023) (explaining that "the Court typically has found clear-statement rules appropriate when a statute implicates historically or constitutionally grounded norms that the Court would not expect Congress to unsettle lightly."); *see also infra*, Part V(G).  Most significantly, the "federalism canon" requires that, where Congress wishes to alter the federal-state balance of power, it must make its intentions "*unmistakably clear* in the language of the statute."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1988) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S. Ct. 3142, 3147 (1985)) (emphasis added).[5]

---

[5] The federalism canon is a "strong-form" clear-statement rule.  A. Scalia, A Matter of Interpretation 27 (1997).  Strong-form canons "load the dice for or against a particular result," again, to serve a value that the judiciary has chosen to specially protect. *Id.*; *see also* A. Barrett, *Substantive Canons and Faithful Agency*, 90 B.U.L. Rev. 109, 124, 168-69 (2010).  And, under

Case 2:22-cv-00709-MSG   Document 48   Filed 08/31/23   Page 10 of 27

For example, the Supreme Court of the United States has explained that abrogation of Eleventh Amendment immunity enjoyed by state governmental entities—thus giving rise to liability and litigation exposure that otherwise would not inure—disrupts the "constitutionally mandated balance of power." *Atascadero State Hosp.*, 473 U.S. at 242.  Accordingly, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention *unmistakably clear* in the language of the statute." *Id.* at 243 (emphasis added).

The federal system also leaves regulation of local criminal activity largely to the states. Along these lines, federal courts should "generally decline[ ] to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach." *Bond v. U.S.*, 572 U.S. 844, 848 (2014).  There should be little doubt that the supervision of local criminal offenders is also within the states' purview absent a constitutional violation or explicit Congressional intervention.

Thus, the federalism canon constrains the federal imposition of systemwide liability on state governments in the same way as it limits systemwide remedies.  And permitting the United States to bring bottom-up claims for systemic relief against state and local governments under the broad substantive prohibitions of the ADA would reshape the federal-state balance in a manner that was not remotely within Congress's contemplation when it enacted Title II.  *See infra*, Parts (B)-(D).[6]  In this vein, the unprecedented imposition of bottom-up liability, litigation exposure,

---

the governing precedent of the Supreme Court of the United States, federalism remains a highly cherished value for this purpose and otherwise. *See, e.g.*, *Will*, 491 U.S. at 65.

[6] The defendants note that the DOJ's continuing references to the memorandum of understanding between the Department and the UJS regarding language access are equally misplaced. *See, e.g.*, DOJ Brief, ECF No. 21, at 31 n.4.  The fact that the Supreme Court of Pennsylvania exercised its discretionary power to voluntarily commit the UJS to salutary systemic improvement relative to

and subordination of state sovereignty raises profound federalism concerns and triggers the federalism canon.[7]

**B.**     **THE UNITED STATES LACKS STANDING TO PURSUE CLAIMS UNDER TITLE II BECAUSE IT IS NOT A PERSON.**

Title II of the ADA, via Section 12133, makes remedies available only to "*any person* alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added).  The DOJ does not dispute—nor could the federal government reasonably dispute—that the sovereign (here, the Department) is not a person.

Whereas Titles I and III of the ADA explicitly confer remedial enforcement authority on the Attorney General, Title II's Section 12133 affords no such power to the United States or any of its instrumentalities.  *See* UJS Brief, ECF No. 18, at 6.  And since the sovereign is not a person, *Return Mail*, 139 S. Ct. at 1861-62, the federal government has no standing to state a cause of action under Title II.  *See* UJS Brief, ECF No. 18, at 5-8; see also *Russello v. U.S.*, 464 U.S. 16, 23 (1983) (explaining that, where "Congress includes particular language in one section of a

---

language access has nothing to do with whether Title II of the ADA imposes bottom-up, systemwide liability against state court system.

[7] As noted, the Court has already observed that one of the liability theories floated by the DOJ (*i.e.*, the component-courts theory) is standardless.  *See* Memorandum Opinion, ECF No. 26, at 14.  And the Department's theories are also limitless in the following respect.  As developed in Part V(B), below, Title II of the ADA confers standing on "person[s]" to pursue redress.  Thus, if the bottom-up theories are made available, they would expose the entire UJS and the Supreme Court of Pennsylvania to liability claims by any disgruntled criminal offender who opts to assert an action based on the offender's supervision by a county court.  The defendants' Eleventh Amendment arguments, of course, would be impeded by the Congress's explicit abrogation *if* a bottom-up Title II claim can advanced against a public entity.  *See infra*, Part V(C) (explaining Eleventh Amendment immunity remains intact where there is a failure to state a Title II claim).

The threat of such standardless bottom-up liability, the prospect of such limitless litigation, and the diminution of state sovereignty are obviously—and legitimately—of tremendous concern to the defendants.  And there really can be no reasonable debate that such prospects alter the sensitive balance of federal-and-state sovereignty.

statute[, as with its use of "Attorney General" in Titles I and III of the ADA,] but omits it in another section of the same Act [e.g., Title II of the ADA], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)).  Under the federalism canon, Congress should be presumed not to have intended to alter the balance of federal-versus-state power without an unmistakably clear statement, as exists under Titles I and III.  *See supra*, Part V(A).

To counter this firmly grounded application of longstanding principles of statutory interpretation—including the federalism canon—the United States has highlighted a decision of the United States Court of Appeals for the Eleventh Circuit that is "anything but straightforward." *Government Standing: The United States*, 13B Fed. Prac. & Proc. Juris. § 3531.11 (3d ed. 2023) (referencing *U.S. v. Fla.*, 938 F.3d 1221 (11th Cir. 2019), *reh'g denied sub nom. U.S. v. Fla. AHCA*, 21 F.4th 730 (2021), *cert. denied*, 143 S. Ct. 89 (2022)).  In this lengthy opinion, the Eleventh Circuit relies on a "cascade of cross-references" to conclude that Congress had obliquely granted the Attorney General the power to state a cause of action against a state public entity under Title II of the ADA.  *U.S. v. Fla.*, 938 F.3d at 1225-46.

The dissenting position, however, is "much more succinct" in concluding that "the Title II authorization of remedies for 'any person alleging discrimination' does not include public enforcement—'person' does not include the sovereign."  *Government Standing*, 13B Fed. Prac. & Proc. Juris. § 3531.11 (referencing *U.S. v. Fla.*, 938 F.3d at 1250-54 (Branch, J., dissenting)); *see also Fla. AHCA*, 21 F.4th at 748-56 (Newsom, J., dissenting to the denial of reargument).  The dissent in *United States v. Florida* also comports with the law of *this* Circuit.  *See, e.g., S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013) (explaining that the plain meaning of an enactment is the best indicator of Congressional intent, and that reviewing courts

decidedly should not go to great lengths to divine intent when the words of the subject enactment are straightforward).

The Eleventh Circuit's convoluted analysis spans "dozens of pages untangling the cross-reference cascade." *Fla. AHCA*, 21 F.4th at 748 (Newsom, J.).  Ultimately, the circuit court relied on Title II's incorporation of Spending Clause remedies ordinarily grounded in contract principles and otherwise requiring a "federal-funding hook."  *U.S v. Fla.*, 938 F.3d at 1244-45.  But if Congress had wished to expand the scope of the United States' remedial powers in Title II of the ADA beyond at most the contract-specific remedies which Congress had circuitously cross-referenced, Congress could have easily said so via an explicit grant of authority.  *See Fla. AHCA*, 21 F.4th at 751-53 (Newsom, J., dissenting); accord *Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132 (1995) ("[W]hen an agency in its governmental capacity is meant to have standing [to sue], Congress says so."); *cf. Sossamon v. Texas*, 563 U.S. 277, 290 (2011) ("We have not relied on the Spending Clause contract analogy to expand liability beyond what would exist under nonspending statutes.").

Instead, Congress deliberately excluded the federal executive branch from Section 12133's conferral of remedial enforcement powers under Title II.  This approach is consistent with the strong federalism concerns that arise under Title II of the ADA given that—in contrast to Titles I and III which principally regulate private entities—Title II regulates state and local governmental units.

By reference to Title III of the ADA, the DOJ has squarely conceded that an *expansion* of the Attorney General's enforcement authority requires explicit Congressional specification: "Congress could not have granted the Attorney General . . . expanded authority in Title III *without specifically mentioning him*."  U.S. Original Brief, ECF No. 21, at 25 (emphasis added).  Yet the

Department inconsistently claims that Congress gave the Attorney General expanded authority in Title II's Section 12133—*i.e.*, enforcement authority exceeding the well-established Spending Clause nexus—*without mentioning him.* This flaw in the United States' arguments reinforces the soundness of adhering to settled principles of statutory construction. Here, Section's 12133's straightforward affordance of remedies to only a "person" is controlling. And any contrary construction of the statute to judicially imply standing to sue state government instrumentalities would squarely violate the federalism canon. *See supra*, Part V(A).

### C. THE UJS AND THE SUPREME COURT OF PENNSYLVANIA ENJOY ELEVENTH AMENDMENT IMMUNITY RELATIVE TO BOTTOM-UP LIABLITY CLAIMS THAT FAIL TO STATE A CLAIM UNDER TITLE II.

The Eleventh Amendment renders states, and state entities that function as arms of the state, immune from any lawsuits commenced by citizens. *See Geness*, 974 F.3d at 269. Although Congress has exercised its power to abrogate this immunity for Title II claims, *see id.* at 270, the immunity remains intact relative to entities against which an ADA claim is not validly stated, *see id.* at 278. And, under the federalism canon, should Congress wish to abrogate the Eleventh Amendment immunity enjoyed by the UJS and the Supreme Court of Pennsylvania, it must do so with unmistakable clarity. *See Atascadero State Hosp.*, 473 U.S. at 242; *see also supra*, Part V(A).

In *Geness*, the Third Circuit held that AOPC's Eleventh Amendment immunity wasn't abrogated at a systemic tier of the UJS, where the plaintiff's claim was derivative from a local court's decision-making in an individual criminal case. *See id.* at 278. Because the plaintiff had failed to set forth a viable Title II claim *against AOPC*, the administrative office's immunity remained intact. *See id.*

Here, as this Court has already recognized, the UJS is in the same posture as AOPC in *Geness*, *see* Memorandum Opinion, ECF No. 26, at 11, as is the Supreme Court of Pennsylvania.

As with AOPC, their Eleventh Amendment immunity remains intact, since, as demonstrated below, the DOJ has not stated a valid claim against them.  *See infra*, Part V(D).[8]

The overriding point is that, had Congress wished to abrogate the Eleventh Amendment immunity of entire judicial systems and state supreme courts in favor of bottom-up liability theories grounded on federal interpretations of state constitutions, it most assuredly would have said so, as required per the federalism canon.

Thus, the Eleventh Amendment immunity enjoyed by the UJS and the Supreme Court of Pennsylvania pertains at the systemic and system-leader levels, particularly since there is no allegation of systemwide discrimination.[9]

### D.  THE DOJ'S COMPONENT-COURTS, SUPERVISORY LIABILITY, AND VICARIOUS LIABILITY THEORIES ARE LEGALLY ERRONEOUS.

#### The Component-Courts Theory

As developed at length in the UJS's brief supporting its motion to dismiss the original complaint, nothing in the ADA or any other provision of law supports the component-courts liability theory or otherwise suggests that the UJS is an organizational entity that can or should be held accountable for the supervision of criminal offenders at the local level.  *See* UJS Brief, ECF No. 18,

---

[8] The DOJ has argued that the Eleventh Amendment concerns claims asserted against state entities by *citizens*, and that it is not a citizen for this purpose.  *See* DOJ Brief, ECF No. 21, at 14-15.  But, to the degree that the Department even has standing, such standing is derivative from the claims of the complainants at the very least with respect to the compensatory damages aspects, if not for all claims. This is especially the case since as detailed in Part V(B) above, whereas Congress explicitly conferred enforcement powers on the federal government in Titles I and III of the ADA, Congress has omitted such enabling authority from Title II.  In other words, particularly in the absence of any allegation of a systemic nexus to the claimed Title II violations, the fact that the DOJ has intervened should not change the immunity calculus.

[9] To the degree the DOJ integrates its own construction of the provisions of the Pennsylvania Constitution into its arguments about Eleventh Amendment immunity, the Pennsylvania Supreme Court's interpretations of those provisions govern over any opinions from the federal level.  *See Bush*, 531 U.S. at 78; *see also supra*, Part V(A).

at 8-20. Section 202 of the ADA prohibits a "public entity," including state government entities, from denying equal services to individuals or discriminating against them because of their disabilities. *See* 42 U.S.C. § 12132. The "public entities" alleged to have committed discrimination in the amended complaint are county courts, not the UJS at large. *See, e.g.*, Amended Complaint, ECF No. 28, at 9-27 ¶¶ 30-137.

In this vein, the direct supervision of criminal offenders, such as the complainants here, is uniquely committed to the local courts—here, the county courts alleged to have committed the infractions complained of by the Department. *See, e.g.*, Pa. Const., art. V, §5(b); 42 Pa.C.S. § 9771 (reflecting the ongoing power of common pleas courts to modify or revoke probation orders after criminal sentencing). In short, the notion that county courts are "legally indistinguishable" from the UJS at large, DOJ Brief, ECF No. 21, at 10 n.2, is specious.[10]

This Court has already recognized the component-courts theory is standardless. *See* Memorandum Opinion, ECF No. 26, at 14. In short, Congress didn't provide any standards because Congress never intended to provide for such bottom-up, systemwide liability in the first instance. The DOJ continues, however, to promote the theory. *See, e.g.*, Amended Complaint, ECF No. 28, at 4 ¶ 11.

Conceptually, application of a component-courts theory would render an entire judicial system liable for individualized decision-making by independently elected local judges. *See, e.g.*, Complaint, ECF No. 1, at 10 ¶ 61 ("Defendant UJS, *through the acts and omissions of its component courts* has . . . violated Title II of the ADA . . ." (emphasis added)). But this Court has already rejected this concept since *Geness* squarely forecloses it. *See* Memorandum Opinion, ECF No. 26, at

---

[10] This Court also captured the essential nature of the UJS in its memorandum opinion dismissing the original complaint. See Memorandum Opinion, ECF No. 26, at 2.

12; *accord King v. Indiana Supreme Court*, No. 1:14-cv-01092, *slip op.*, 2015 WL 2092848 (S.D. Ind. May 5, 2015).  Moreover, the DOJ appears to accept this limitation.  *See id.* at 12 n.6.

Thus, the DOJ urges this Court to look entirely away from the text of Title II to shore up the Department's unviable component-courts theory.  The Court therefore has been asked to divine a liability scheme and plot out its contours by judicial implication and/or via novel interpretations of substantive, federal common law.  To the DOJ, whereas discrete decisions of the county courts supervising criminal offenders are initially off the table as a means of creating systemwide liability, if such county-court-level judicial decisions span multiple cases—thus constituting "blanket" or "*per se*" policies (still at the local level)—the entire UJS may nonetheless be held accountable.  *See, e.g.*, Amended Complaint, ECF No. 28, at 2 ¶ 3.  According to the Department, blanket policies can go underground and be disguised as individualized judicial decision-making.  *See, e.g., id.* (alleging that some county courts maintain "unwritten blanket administrative policies and practices violating Title II").  So, for the DOJ, the shored-up component-courts theory can be employed to fuel bottom-up litigation challenging individualized judicial decision-making notwithstanding *Geness*.[11]

The Court might reject this shored-up, component-courts theory on account of the underlying machinations alone.  Or more simply, the Court should conclude: the creation of and formulation for bottom-up, systemwide liability is legislative in character; such liability has in no way been provided for by Congress in Title II; per the federalism canon liability cannot be implied judicially; and the matter is entirely unsuitable to substantive, federal-common-law lawmaking.  *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.").

---

[11] Federal courts understand the profound difficulties engendered by the sort of close-in monitoring of the daily operations of county courts contemplated by the DOJ and have abstained from entertaining claims contemplating such extraordinary and intrusive relief.  *See infra*, Part V(G).

A federal-law requirement for an entire judicial system to answer for infractions committed by any component unit greatly disrupts the "constitutionally mandated balance of power." *Atascadero State Hosp.*, 473 U.S. at 242. Thus, Title II cannot be construed as providing for this sort of liability, litigation exposure, and subordination of state sovereignty: where there is no Congressional manifestation at all—let alone an "unmistakably clear" one—to provide for systemwide liability. *See supra*, Part V(A). Instead, Congress explicitly allocated responsibility for violations to the public entity that is alleged to have discriminated or denied services based on disabilities. *See* 42 U.S.C. § 12132.[12]

In summary, the ADA violations alleged in this case occurred in a particular context in which the local courts are uniquely empowered, namely, the direct supervision of criminal offenders. And there is no cognizable component-courts theory of liability that would render the entire state judicial system liable for such local transgressions if proven. To the degree this Court would entertain the shored-up component-courts theory in the abstract, the few additional allegations set forth in the amended complaint—many of which are as vague as those in the original

---

[12] The DOJ has relied on *Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000), and *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir. 2008), to support its component-courts theory. But these aren't bottom-up cases imposing systemwide liability on state government. Rather, the cases stand for the unremarkable proposition that judicial districts are state entities, and thus, are not persons for purposes of Section 1983 of Title 42 of the United States Code and enjoy Eleventh Amendment Immunity. *See Callahan*, 207 F.3d at 668; *Haybarger*, 551 F.3d at 198. Indeed, in both of those cases—as contrasted with the present one—the judicial districts' status as Commonwealth entities was directly relevant to the specific, governing provision of federal law (since Section 1983 imposes federal liability on a "person" and not states, and the Eleventh Amendment afford immunity to "States").

But here, the circumstances are quite to the contrary: Title II of the ADA imposes liability only on the "public entity" engaging in discrimination, 42 U.S.C. § 12132, and says nothing about systemwide or supervisory liability. The fact that county courts are integral components of a larger Unified Judicial System—which has never been in dispute—has no relation to the relevant terms of Title II.

complaint—are insufficient to change the status quo and create systemwide liability.  *See* Memorandum Opinion, ECF No. 26, at 13-15.

### The Supervisory-Liability Theory

With respect to the claim against the Supreme Court of Pennsylvania, the DOJ fails to present—and certainly cannot present—the essential allegation that the Supreme Court itself has denied equal services to or discriminated against anyone.  *See* 42 U.S.C. § 12132.  Rather, the Department claims only that the Supreme Court failed "to prevent UJS Courts under its supervisory authority" from discriminating.  *See* Amended Complaint, ECF No. 28, at 34  ¶¶ 161-163.

But just as Title II of the ADA disproves the DOJ's component-courts theory, the Department's supervisory-liability theory also lacks Congressional authorization.  Again, the "public entities" alleged to have engaged in discrimination are the county courts identified in the amended complaint.  *See, e.g.*, Amended Complaint, ECF No. 28, at 9-27 ¶¶ 30-137.  Whereas the federalist canon requires alterations of the federal-state balance by Congress to be unmistakably clear, *see supra*, Part V(A), Title II of the ADA contains no language whatsoever creating state-high-court supervisory liability, litigation exposure, and subordination of states sovereignty.  And the DOJ's attempt to federally instrumentalize the Pennsylvania Constitution to engender these prospects usurps the Supreme Court of Pennsylvania's governing interpretations of its own Constitution.  *See Bush*, 531 U.S. at 78; *see also supra*, Part V(A).

Thus, in the same way the component-courts theory crumbles in the wake of *Geness*, the supervisory-liability theory unravels.  The Supreme Court of Pennsylvania is not a "judicial back-seat driver" relative to county court supervision of criminal offenders.  Memorandum Opinion, ECF No. 26, at 10 (quoting *Geness*, 974 F.3d at 277).  Certainly, the Supreme Court has supervisory authority within the sound discretion allocated to it by the Pennsylvania Constitution.

But the federal courts should not judicially imply state-court-supervisory liability or engage in the sort of judicial substantive federal-common-law lawmaking that the DOJ's bottom-up theory contemplates.  To do so would federally instrumentalize a state constitution, override state sovereignty, and usurp the supervisory authority vested in the state supreme court under that state charter.  *See supra*, Part V(A).

### Vicarious Liability

As a fallback relative to its supervisory-liability theory, the DOJ has invoked vicarious liability principles in a more generalized fashion.  *See* DOJ Pre-Motion Letter (June 28, 2023), ECF No. 29, at 2 n.3.

There is a circuit split over whether vicarious liability applies at all in the Title II context. *Compare Jones v. City of Detroit*, 20 F.4th 1117 (6th Cir. 2021) (relying upon *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274 (1998), *with Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).  As their lead argument, the defendants urge the Court to apply the reasoning of *Jones*. That is:  Title II of the ADA incorporates the rights and remedies of Title VI of the Civil Rights Act of 1964, and the United States Supreme Court held, in *Gebser*, that vicarious liability is unavailable in the Title VI context.  *See Jones*, 20 F.4th at 1119-21.

The dissent, in *Jones*, opens with a presumption that Congress legislates against the background of common-law principles.  *See Jones*, 20 F.4th at 1123 (Nelson Moore, dissenting). But when applied in a manner that alters the sensitive federal-and-state balance of interests, these sorts of non-textual presumptions—invoked to override Eleventh Amendment immunity and support judicially-implied liability on the part of state governments—run squarely afoul of the federalism canon.  *See Will*, 491 U.S. at 65; *see also supra*, Part V(A).

Again, had Congress wished to provide bottom-up, system-leader liability for state court systems, it surely would and should have said so.  And in the absence of a manifestly clear statement by Congress to this effect, the federalism canon operates to preclude the federal courts from proceeding along the lines of the *Jones* dissent and judicially implying vicarious liability. *See supra*, Part V(A).

Just as fundamentally, even if vicarious liability theoretically could apply, the theory requires an underlying agency relationship.[13]  And, when they supervise criminal offenders, the independently elected judges of Pennsylvania's county courts most assuredly do not act as agents of the Supreme Court of Pennsylvania.  To the contrary, they exercise their constitutionally prescribed original jurisdiction to satisfy legislatively prescribed jurisdictional mandates.

The Department can present no decision of any court imposing bottom-up, common-law vicarious liability on a state high court for discrimination or other illegalities that are not systemwide.[14]  That is because such liability simply does not exist (likely because it is untenable).

---

[13] Because there is no textual Congressional authorization for vicarious liability, federal courts "borrow from common law agency principles '[w]hen grappling with the standard for imposing vicarious liability in civil liability provisions.'" *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 326 (5th Cir. 2016) (quoting *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.,* 727 F.3d 343, 349 (5th Cir. 2013)).  Federal courts most often cite Section 219 of the Second Restatement of Agency when addressing vicarious liability in civil-rights statutes.  *See Bias*, 816 F.3d at 326. Section 219, entitled "When Master Is Liable for the Torts of His Servants" applies classic agency-law principles most often arising in employment scenarios.  *See* Restatement Second of Agency § 219 (1958).

[14] The DOJ relies on various cases that apply traditional agency principles, such as the vicarious liability of counties for their employees, *see* DOJ Pre-Motion Letter (June 28, 2023), ECF No. 29, at 2 n.3 (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001), *Delano-Pyle v. Victoria Cty, Texas*, 302 F.3d 567, 574-75 (5th Cir. 2002), and *Gunup v. Lancaster Cty.*, 2008 WL 4771852, at *1 (E.D. Pa. Oct. 29, 2008)); and liability of a rail carrier for acts of an employee, *see id.* (citing *Waters v. Amtrak*, 456 F. Supp. 3d 666, 671 (E.D. Pa. 2020).  In each of these cases— contrary to the present one—a classic agency relationship existed.

And creating it by judicial implication or substantive federal-common-law lawmaking disrupts the sensitive federal-state balance and runs headlong into the federalism canon.  *See supra*, Part V(A).

The DOJ's reliance on the survival of a form of bottom-up claim against the Commonwealth government in the *Geness* line of decisions is equally inapt.  *See* DOJ Pre-Motion Letter (June 12, 2023) (citing *Geness v. Pennsylvania*, 503 F. Supp. 3d 339-44 (W.D. Pa. 2020) (holding that the Commonwealth government might be liable under Title II for the conduct of a county-court judge)).  Whatever vicarious liability may or may not exist relative to the executive branch, as to the judiciary, state-level administrative bodies are not "judicial back-seat drivers." *Geness*, 974 F.3d at 277; Memorandum Opinion, ECF No. 26, at 10.  And the Supreme Court of Pennsylvania stands on precisely the same footing as a state-level administrative body, *accord id.* at 11, no matter how many flawed theories the Department conjures. [15]

With no textual grounding for its theories in the ADA, the DOJ is simply asking the Court to judicially imply liability or engage in inappropriate substantive federal common-law lawmaking by adopting its bottom-up, supervisory- and vicarious-liability theories.  For the reasons set forth here and in Part V(A), the Court should reject these deeply flawed overtures.

### E.    THE UNITED STATES HAS FAILED TO PLEAD, AS REQUIRED, THAT COMPLIANCE CANNOT BE SECURED BY VOLUNTARY MEANS.

In its brief in support of its original motion to dismiss, the UJS explained that the DOJ has not pled that compliance cannot be secured by voluntary means.  *See* UJS Brief, ECF No. 18, at 20-23.  In response, the Department has argued that, under Federal Rule of Civil Procedure 9(c),

---

[15] The defendants also submit that the decision of the United States District Court for the Western District of Pennsylvania in *Geness*—which abrogated the Eleventh Amendment immunity of the Commonwealth government and judicially implied a theory of liability against the state government—violates the federalism canon, which the court failed to analyze or apply.

it is sufficient for it to say merely: "All conditions precedent to the filing of this Amended Complaint have occurred or been performed." Amended Complaint, ECF No. 28, at 32 ¶ 159.

But as reflected in *United States v. Arkansas*, No. 4:10CV00327, 2011 WL 251107 (E.D. Ark. Jan. 24, 2011), when—as in the remedial provision incorporated into Title II—the condition precedent is an integral statutory prerequisite, Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at *3-4; *accord* 5A Fed. Prac. & Proc. Civ. § 1303 (4th ed. 2023) ("[I]t is the applicable substantive law that determines whether the performance or occurrence of conditions precedent is an element of the claim; if so, Rule 8(a)(2) places the burden on the plaintiff to plead that element (and all others) to state a claim successfully.") (footnote omitted).

At bottom, as previously related, the defendants maintain that the DOJ's decision to commence litigation a mere two weeks after the Department had put the UJS on notice of its findings and conclusions wasn't a good-faith effort to obtain voluntary cooperation, but instead, resulted from the Department's own protracted delay in conducting its drawn-out investigation. *See* UJS Brief, ECF No. 18, at 20-22.

## F.   THE CLAIMS PREMISED ON THE ADMINISTRATIVE ORDER OF THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY ARE UNTIMELY.

While the defendants and the DOJ differ on the length of the applicable statute of limitations, the DOJ's claims arising from the administrative order in Jefferson County are untimely under its own theory that a three-year statute applies. *See* UJS Brief, ECF No. 23-24. Although the Department baldly invokes the discovery rule, that argument should have no force where the Jefferson County Court of Common Pleas' administrative order was filed as a matter of public record. *See id.* Simply put, there was never any latent information here to be discovered.

## G.     THE COURT SHOULD DISMISS THE PRESENT CASE FOR IMPROPER VENUE OR ABSTAIN FROM FURTHER REVIEW.

If the Court rejects the bottom-up theories of systemwide and system-leader liability, the DOJ is left with only a series of alleged Title II violations by out-of-district county courts.[16]  Thus, the Court may choose to dismiss the matter for improper venue.  *See* 28 U.S.C. § 1406(a).[17]

Alternatively, the Court may abstain from consideration of the DOJ's equitable claims under *O'Shea v. Littleton*, 414 U.S. 488 (1974).[18]  Per *O'Shea*, federal courts choose not to entertain actions seeking to impose "an ongoing federal audit of state . . . proceedings."  *Id.* at 500; *Kauffman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (explaining that "federal courts cannot 'legislate and engraft new procedures upon existing state criminal practices'") (quoting *Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir. 1975); *accord Pipkins v. Stewart*, No. 5:15-cv-2722, 2019 WL 1442218, *10 (W.D. La. Apr. 1, 2019) (declining, under *O'Shea*, to exercise jurisdiction to entertain protracted court supervision of a local district attorney's office to redress racial discrimination in jury selection).

---

[16] The Lackawanna and Northumberland County Courts of Common Pleas lie in the federal Middle District of Pennsylvania, and the Jefferson and Blair County Courts of Common Pleas are located in the Western District.

[17] The DOJ has argued that counsel's acceptance of service of the amended complaint somehow acts as a waiver for the duration of the case of any venue objections regardless of which, if any, proper parties remain in the case.  *See* DOJ Pre-Motion Letter (June 28, 2023), ECF No. 29, at 2 n.3.  That certainly was never counsel's intent in facilitating this ongoing litigation by accepting service of the amended complaint at the Department's request.  Moreover, the defendants accede to venue so long as the UJS and the Supreme Court are defendants in the case; it is only upon dismissal of the claims against those defendants that the status quo will change, and the venue issue arises.  And in any event, the Court may act *sua sponte* in furtherance of the proper administration of the proceedings, upon dismissal of the claims against the UJS and the Supreme Court, to dismiss the entire case for improper venue.  *See, e.g.*, *Daker v. Bryson*, 841 F. App'x 115, 124 (11th Cir. 2020).

[18] In their pre-motion letter, the defendants referred to another abstention doctrine rooted in federalism, namely, the *Rooker-Feldman* doctrine.  On reflection, the defendants believe the *O'Shea* variant is more apt here.

VI.    CONCLUSION

The Defendants request dismissal of the amended complaint with prejudice.

                                    Respectfully submitted,


                                    **/s/Robert J. Krandel**
                                    ROBERT J. KRANDEL
                                    Attorney I.D. No. PA89485
                                    GERI ROMANELLO ST. JOSEPH
                                    Attorney I.D. No. PA84902
                                    Supreme Court of Pennsylvania
                                    Administrative Office of PA Courts
                                    1515 Market Street, Suite 1414
                                    Philadelphia, PA 19102
                                    legaldepartment@pacourts.us
                                    (215) 560-6326, Fax: (215) 560-5486

                                    ***Counsel for Defendants***

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No.  22-cv-00709 |
| v. | : | |
| | : | |
| THE UNIFIED JUDICIAL SYSTEM | : | |
| OF PENNSYLVANIA, | : | |
| | : | |
| *Defendant* | : | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 31, 2023, he personally caused

to be served upon the following a true and correct copy of the foregoing *Motion to Dismiss*

*Plaintiff's Amended Complaint, and Brief in Support of Motion*, via CM/ECF to:


**David W. Knight, Esquire**
Civil Rights Division
Disability Rights Section
USAO Program Coordinator
950 Pennsylvania Avenue, NW
4-CON
Washington, DC 20530
Email: david.knight@usdoj.gov

**Adam F. Lewis, Esquire**
DOJ-Crt
Civil Rights Division
4 Constitution Square
150 M Street NE
Washington, DC 20530
202-305-6797
Email: adam.lewis@usdoj.gov

**Jacqueline Christine Romero, Esquire**
**Lauren Debruicker, Esquire**
US Attorney's Office
615 Chestnut Street
Philadelphia, Pa 19106
Email: jacqueline.romero@usdoj.gov

**Michael J. Butler, Esquire**
US Attorney's Office- MDPA
228 Walnut Street, Suite 220
Harrisburg, Pa 17108
Email: michael.j.butler@usdoj.gov

/s/Robert J. Krandel
**ROBERT J. KRANDEL**
Attorney I.D. No. PA89485
GERI R. ST. JOSEPH
Attorney I.D. No. PA84902
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486

*Counsel for Defendant Unified Judicial*
*System*