# EXHIBIT A
## Settlement Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA, THE SUPREME COURT OF PENNSYLVANIA, THE BLAIR COUNTY COURT OF COMMON PLEAS, THE LACKAWANNA COUNTY COURT OF COMMON PLEAS, THE JEFFERSON COUNTY COURT OF COMMON PLEAS, and THE NORTHUMBERLAND COUNTY COURT OF COMMON PLEAS,<br><br>    Defendants. | CIVIL NO. 2:22-cv-00709-MSG<br><br>SETTLEMENT AGREEMENT |

## INTRODUCTION

1. The United States of America brought this action against the Unified Judicial System of Pennsylvania (UJS), the Supreme Court of Pennsylvania, the Blair County Court of Common Pleas, the Lackawanna County Court of Common Pleas, the Jefferson County Court of Common Pleas, and the Northumberland County Court of Common Pleas, to enforce Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. Part 35. The Supreme Court of Pennsylvania having been dismissed with prejudice by agreement, the United States and the remaining parties to this action ("Defendants") agree to a settlement as set forth herein. Additionally, having agreed to undertake certain actions to implement the settlement, the Administrative Office of Pennsylvania Courts is a signatory to this Agreement.

2. The United States has alleged that Defendants discriminated against individuals

with Opioid Use Disorder (OUD) in the administration of their court supervision programs, in violation of Title II of the ADA, by prohibiting or otherwise limiting the use of medication prescribed to treat OUD.

3. The Defendants deny that they have failed to comply with the requirements of the ADA, and this Agreement is not an admission of wrongdoing by the Defendants. Defendants do not admit that they have ever acted improperly or unlawfully towards individuals with disabilities under court supervision as alleged by the United States and are seeking to settle this case in order to conclusively resolve the differences that exist between them and the United States. Further, the UJS contends that the United States' investigation, while identifying some issues in individual judicial districts, did not find widespread violations.

4. The United States and Defendants agree that it is in the Parties' best interests, and the United States believes it is in the public interest, to resolve this matter on mutually agreeable terms. The Parties voluntarily enter into this Agreement, as set forth below.

## THE PARTIES

5. Plaintiff is the United States of America.

6. Defendant UJS is established by the Constitution of the Commonwealth of Pennsylvania and consists of all the state courts and judges in the Commonwealth of Pennsylvania including "the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal courts in the City of Philadelphia, [and] such other courts as may be provided by law and justices of the peace." Pa. Const. art. V, §1. Each County Court of Common Pleas is a component court of the UJS. The United States alleges that as the state court system of Pennsylvania, the UJS is a "public entity" subject to Title II of the ADA and its implementing regulation. 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104. Defendant UJS denies that it is a separate entity that can be sued.

7. Defendant Blair County Court of Common Pleas is a public entity subject to Title II of the ADA and its implementing regulation. 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104.

8. Defendant Lackawanna County Court of Common Pleas is a public entity subject to Title II of the ADA and its implementing regulation. *Id.*

9. Defendant Jefferson County Court of Common Pleas is a public entity subject to Title II of the ADA and its implementing regulation. *Id.*

10. Defendant Northumberland County Court of Common Pleas is a public entity subject to Title II of the ADA and its implementing regulation. *Id.*

## LEGAL STANDARDS

11. Title II of the ADA prohibits public entities from administering or operating their programs in a manner that discriminates against individuals with disabilities. 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

12. Public entities may not "impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8).

13. Public entities may not utilize criteria or methods of administration that (i) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; or (ii) have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. *Id.* § 35.130(b)(3).

14. "The phrase 'criteria or methods of administration' refers to official written policies of the public entity and to the actual practices of the public entity." 28 C.F.R. pt. 35, App. B.

15. Public entities may impose legitimate safety requirements necessary to safely operate their services, programs, or activities, but only if such requirements "are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." *Id.* § 35.130(h).

16. The United States alleges that Complainants identified in its amended complaint (ECF Dkt. No. 28) are qualified individuals with disabilities who are protected by Title II of the ADA because of their OUD. Complainants' OUD is a physical or mental impairment that substantially limits one or more major life activities, which includes the operation of major bodily functions. 28 C.F.R. § 35.108(b)(2) (defining physical or mental impairment to include "drug addiction"). Complainants' OUD substantially limits major life activities, such as caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A); 28 C.F.R. § 35.108(c)(1)(i). Complainants' OUD also limits the operation of major bodily functions, such as neurological and brain functions. 42 U.S.C. § 12102(2)(B); 28 C.F.R. § 35.108(c)(1)(ii). The determination of whether an impairment substantially limits a major life activity is made without regard to the effect that ameliorating measures—including medication—may have on the impairment. 42 U.S.C. § 12102(4)(E)(i); 28 C.F.R. § 35.108(d)(1)(viii).

17. The United States alleges that Complainants identified in its amended complaint are not currently engaged in the illegal use of drugs. 42 U.S.C. § 12210; 28 C.F.R. § 35.131. An individual's use of controlled substances is not an "illegal use of drugs" if the person takes those substances "under supervision by a licensed health care professional, or other uses authorized by

the Controlled Substances Act or other provisions of Federal law." 42 U.S.C. § 12210(d)(1). This includes buprenorphine, methadone, or naltrexone medications prescribed to treat OUD.

**ACTIONS TO BE TAKEN BY DEFENDANTS**

18. <u>General Nondiscrimination Obligation</u>. Defendants, directly and through any applicable contractual or other arrangements, will comply with the requirements of Title II of the ADA and its implementing regulation by ensuring that individuals with disabilities have equal opportunities to benefit from Defendants' programs. These requirements include that:

    a.    Defendants will not exclude individuals with disabilities from or deny them the benefits of its services, programs, or activities, or otherwise subject them to discrimination. *See* 28 C.F.R. § 35.130(a).

    b.    Defendants will not deny individuals with disabilities the opportunity to participate in or benefit from Defendants' aids, benefits, services, or programs. Nor will Defendants provide individuals with disabilities opportunities that are unequal to those afforded to individuals who do not have disabilities. *See id*. § 35.130(b)(1).

    c.    Defendants will not provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. *See id.* § 35.130(b)(1)(iv).

    d.    Defendants will not impose or apply eligibility criteria that screen out or tend to screen out individuals with disabilities from fully and equally enjoying Defendants' services, programs, or activities, unless it can show that such criteria are necessary for its provision of those services, programs, or activities. *See id.* § 35.130(b)(8).

e. Defendants will not utilize criteria or methods of administration that (i) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; or (ii) have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Defendants' programs with respect to individuals with disabilities. *Id.* § 35.130(b)(3).

19. <u>Policy Adoption</u>: Within 60 days of the Effective Date, the Administrative Office of Pennsylvania Courts will recommend and encourage all judicial districts to adopt—as an addendum to their policy implementing the Americans with Disabilities Act—the attached Policy (see Exhibit 1) regarding medication to treat OUD. Within 90 days of the Effective Date, three Defendant County Courts of Common Pleas (Blair, Jefferson, and Northumberland) will adopt the Policy. Within six months of the Effective Date, the Administrative Office of Pennsylvania Courts will report to the United States on the steps taken to recommend and encourage all judicial districts to adopt the Policy, and on which counties agreed to adopt the Policy.

20. <u>Policy Distribution</u>: Within 90 days of the Effective Date:

a. The three Defendant County Courts of Common Pleas identified in paragraph 19 will: (i) post links to the Policy in conspicuous locations on their respective website homepages, if such exists; (ii) provide copies of the Policy to all current personnel and treatment court team members; (iii) provide copies of the Policy to all new personnel and treatment court team members within 30 days of them being hired or joining a treatment court team; and (iv) provide copies of the Policy and a guide produced by the National Association of Drug Court Professionals on Understanding Medication to Treat Opioid Use Disorder to all individuals under court supervision.

b. The Administrative Office of Pennsylvania Courts will: (i) ensure that a link to the Policy is posted in a conspicuous location on the "ADA Compliance" page of the UJS's website; and (ii) recommend and encourage all judicial districts to provide individuals under court supervision with a copy of the Policy and the above-mentioned document on Understanding Medication to Treat Opioid Use Disorder. The Administrative Office of Pennsylvania Courts will distribute the Policy and the referenced document to all judicial districts by sending copies to the President Judges of each district along with an instruction that substantially tracks the language of this provision.

21. <u>Training</u>: The Administrative Office of Pennsylvania Courts will provide training on the Policy and Title II of the ADA to all UJS judges handling criminal matters, and all probation and treatment court coordinators, including training about OUD, medications used to treat OUD, and disability discrimination in general as follows.

    a. The training will be provided by All Rise or by another mutually agreed upon trainer.

    b. An initial training will be offered live at a Pennsylvania Conference of State Trial Judges conference (or, in the alternative, in a live virtual format to all state trial judges) immediately following the Effective Date and will give participants an opportunity to pose questions to the trainers. The training will be recorded to be shared with those who are unable to attend in person. A second live training will be offered at the Pennsylvania Association of Treatment Court Professionals during the term of the Agreement.

    c. The three Defendant County Courts of Common Pleas identified in

paragraph 19 will ensure in their respective judicial districts that: (i) all judges handling criminal matters and all probation and treatment court coordinators attend the live training or promptly view the video recording; (ii) all new judges and all new probation or treatment court coordinators attend the live training or view the video recording within 60 days of their hiring.

        d.      Within three months of the Effective Date, the Administrative Office of Pennsylvania Courts will: (i) recommend and encourage all judicial districts to ensure that judges handling criminal matters and all current personnel and treatment court team members attend the live training or view the video recording; and (ii) recommend and encourage all judicial districts to ensure that all new judges and all new personnel and treatment court team members attend the live training or view the video recording within 60 days of their hiring.

22.    Compliance: Defendants will take all necessary steps to effectuate the terms of this Agreement including:

        a.      The Administrative Office of Pennsylvania Courts will encourage all UJS court programs, including treatment court programs, and all related employees, agents, and contractors, to comply with the Policy and to ensure that corrective actions are implemented for any deviation from the Policy.

        b.      The Problem-Solving Courts Administrator and Coordinator for Court Access will aid Defendants with training on Title II of the ADA and specifically medication for OUD in treatment courts. The Coordinator for Court Access will assist individual judicial district ADA coordinators with investigating and resolving complaints or grievances alleging disability discrimination consistent with the requirements of this

Agreement, Pennsylvania Rules of Judicial Administration 250-52, and the ADA.

23. <u>Information and Data Sharing</u>: Information and data will be shared as set forth below to assist the Parties in assessing progress on actions required by this Agreement; to identify problems; and to facilitate delivery of additional technical assistance. Whenever information or data is shared, the Parties agree to confer as needed to clarify facts and issues.

    a.    Within nine months of the Effective Date, and again 90 days prior to the conclusion of this Agreement, the Administrative Office of Pennsylvania Courts will provide a report to the United States detailing the number, nature, and disposition of all complaints regarding access to OUD medication submitted to any component of the UJS.

    b.    Within nine months of the Effective Date, and again 90 days prior to the conclusion of this Agreement, the Administrative Office of Pennsylvania Courts will provide a report to the United States detailing all efforts undertaken by the Administrative Office of Pennsylvania Courts and the three Defendant County Courts of Common Pleas identified in paragraph 19 with respect to each required action in this Agreement. This report will include a description of all trainings conducted and the date they were conducted, attendance lists for each of the two live trainings, and confirmation from the three Defendant County Courts of Common Pleas that all probation and treatment court coordinators attended one of the live trainings or viewed a video recording of the trainings, consistent with Paragraph 21(c). It will also detail any problems encountered, and any plans to be completed in the year ahead.

    c.    Defendants agree to work collaboratively with the United States to provide information in response to its reasonable inquiries about matters covered by this Agreement.

24. <u>Communication Methods</u>: All materials exchanged by the Parties related to this Agreement will be sent by email to undersigned counsel. If the materials cannot be emailed, they will be sent by common carrier other than the U.S. Postal Service to the appropriate below address with a cover letter including a subject line referencing DJ No. 204-64-170.

    a. <u>For the United States</u>: David Knight and Adam Lewis, Trial Attorneys (DJ No. 204-64-170), Disability Rights Section, Civil Rights Division, U.S. Department of Justice, 4 Constitution Square, 150 M Street NE, 9th Floor, Washington, D.C. 20002.

    b. <u>For the Defendants</u>: Robert Krandel, 1515 Market Street Suite 1414, Philadelphia, PA, 19102.

25. <u>Damages</u>: Within 15 days of the Effective Date, Defendants will offer to pay aggrieved individuals a total of $100,000, as authorized by 42 U.S.C. § 12133. The United States will identify to Defendants each aggrieved person and the amount that person will receive. This amount will not be subject to withholding deductions, and Defendants will issue an IRS Form 1099 to each aggrieved person for these amounts.

26. Defendants will send each identified aggrieved individual a copy of this signed Agreement, the Notice Letter and Release of Claims Form attached as Exhibits 2 and 3, and an offer of payment. Defendants will send the United States copies of the Notice Letter and the Release of Claims Form when they are sent to each aggrieved person.

27. In order to accept the relief offered by Defendants, each aggrieved person must execute and return the Release of Claims (Exhibit 3) to Defendants within 30 days of receiving the Notice Letter (Exhibit 2).

28. For each aggrieved person who accepts the relief as described in Paragraphs 25-27 above, Defendants must pay the total monetary amount within 90 days of receiving that

person's signed Release of Claims Form.  Within 30 days of paying each aggrieved person, Defendants will send the United States proof of payment and a copy of each aggrieved person's signed Release of Claims Form.

## IMPLEMENTATION AND ENFORCEMENT

29.     Within 14 days of the Effective Date, the Parties shall jointly move the Court to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 41(a)(2), subject to reinstatement as set forth in the following paragraph.  The joint motion will include this Agreement as an Exhibit.

30.     Defendants agree to work collaboratively with the United States in response to its reasonable inquiries about matters covered by this Agreement.  If the United States believes that Defendants have failed to timely comply with any requirement of this Agreement, the United States will notify Defendants in writing and the Parties will try to resolve the issue in good faith.  If the Parties cannot resolve the issue, the United States may move to reinstate the underlying civil action against the Defendants as defined herein for purposes of resolving any such claims of breach.  Defendants agree not to contest any such motion but do not waive their ability to contest the merits of the alleged breach or any other defenses to the underlying civil action.  Alternatively, the United States may bring a civil action for breach of this Agreement or any provision thereof, or for a violation of Title II of the ADA, in an appropriate United States District Court seeking any appropriate relief.

31.     Failure by the United States to enforce any provision of this Agreement will not be construed as a waiver of the United States' right to enforce any provision of this Agreement.

32.     If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement will remain in full force and effect.

33.     Any modification of this Agreement, including to any time limits for performance, may be made only by the mutual written consent of the Parties with approval of the

Court.

34. This Agreement is binding on Defendants, each of their officers, agents, employees, successors, and assigns, and all other persons in active concert or participation with them.

35. The signatories to this document representing Defendants are authorized to bind Defendants to the terms of this Agreement.

36. This Agreement constitutes the entire agreement between the United States and Defendants on this matter. No other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Agreement, including its attachments, is enforceable.

37. Except for the enforcement of the terms of this Agreement, neither those terms nor the fact of the present settlement can be used by the United States for any purpose in any other proceeding, investigation, or action against any component of the Pennsylvania Unified Judicial System, the Defendants or the Supreme Court of Pennsylvania.

38. This Agreement is not intended to remedy any other potential violations of the ADA or any other law that are not specifically addressed in this Agreement.

39. This Agreement does not affect Defendants' continuing responsibility to comply with all aspects of the ADA.

40. The Parties agree that following execution of this Agreement, further litigation is not "reasonably foreseeable" concerning the matters described in the amended complaint. To the extent either party previously implemented a litigation hold to preserve documents, electronically stored information, or things, the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves either party of any other obligations imposed by this

Agreement.

41.     All durations specified in this Agreement run from the Effective Date of the Agreement unless otherwise indicated.

42.     Each of the Parties will bear its own costs and attorney fees associated with this litigation.

43.     This Agreement shall be effective on the date the last party executes the Agreement (i.e., the Effective Date) and will remain in effect for two years.

FOR THE UNITED STATES OF AMERICA:

| | |
|---|---|
| JACQUELINE C. ROMERO<br>United States Attorney<br>Eastern District of Pennsylvania | REBECCA B. BOND<br>Chief |
| | *(signature)* |
| GREGORY B. DAVID<br>Assistant United States Attorney<br>Chief, Civil Division | KEVIN KIJEWSKI<br>Deputy Chief<br>DAVID W. KNIGHT<br>ADAM F. LEWIS |
| CHARLENE KELLER FULLMER<br>Assistant United States Attorney<br>Deputy Chief, Civil Division | Trial Attorneys<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice |
| MICHAEL J. BUTLER<br>Special Assistant United States Attorney | 150 M Street NE<br>Washington, D.C. 20530<br>Telephone: 202-307-0663<br>David.Knight@usdoj.gov |
| LAUREN DEBRUICKER<br>Assistant United States Attorney<br>Deputy Civil Chief for Civil Rights<br>United States Attorney's Office<br>Eastern District of Pennsylvania<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106<br>Telephone: 215-861-8492<br>Michael.J.Butler@usdoj.gov<br>Lauren.DeBruicker@usdoj.gov | Adam.Lewis@usdoj.gov<br><br>  1/31/2024  <br>DATE |

For the Unified Judicial System of Pennsylvania (UJS), the Administrative Office of Pennsylvania Courts, the Blair County Court of Common Pleas, the Lackawanna County Court of Common Pleas, the Jefferson County Court of Common Pleas, and the Northumberland County Court of Common Pleas:

/s/Robert J. Krandel/rjk                    1/30/2024
ROBERT J. KRANDEL                           DATE
Legal Counsel
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

**Exhibit 1 (Addendum ADA Policy in Judicial Districts)**

It is the policy of this judicial district to prohibit discrimination against all individuals—including those with substance use disorder—in accessing or participating in judicial proceedings or other Court services, programs, or activities.

The United States Department of Justice maintains that blanket or *per se* bans barring or otherwise limiting persons under court supervision (including pretrial probation and release, post-conviction probation and parole, and Problem-Solving Courts—including Adult, Juvenile, or Family Drug Court; DUI Court, Adult or Juvenile Mental Health Court; veterans Treatment Court; Domestic Violence Court) from accessing physician-prescribed medications and treatment is a violation of the Americans with Disabilities Act (ADA).

It is the policy of this judicial district to conform to the position of the United States Department of Justice in the following respects.

Absent an individualized determination, as more fully described below, no judge, unit, or member of this judicial district may prohibit or otherwise limit an individual's use of medication that they have been lawfully prescribed, and that they are taking as prescribed, to treat substance use disorder.

Decisions about whether a person should be prescribed medication, and about medication type and dosage, are to be made only by a licensed prescriber on an individualized basis.

No judge, unit, or member of this judicial district will interfere with a licensed prescriber's decisions about an individual's appropriate medication and treatment regimen.

No judge, unit, or member of this judicial district will express a preference for, or mandate, one medication over another nor in any way penalize or restrict an individual participating in a court proceeding or program from taking their medication as prescribed.

No judge, unit, or member of this judicial district will condition admission to, participation in, or successful completion of a Problem-Solving Court or other court program, service, or activity on reducing, weaning off, or abstaining from taking prescribed medication.

No judge, unit, or member of this judicial district will rely upon prior illicit use of medication for substance use disorder as grounds for prohibiting current use of medication for substance use disorder that comes from a licensed prescriber.

Individuals with substance use disorder who are participating in a court proceeding or program may be required to comply with the treatment recommendations of a licensed prescriber.

This Policy is not intended to interfere with appropriate exercises of judicial discretion in individual cases. To that end, nothing in this Policy limits a judge's discretion to order that an individual be evaluated for medical treatment or comply with a treatment plan as a condition of release, probation, supervision, or participation in a Problem-Solving Court or other court or probation program. In issuing such an order, a judge should make an individualized

determination, based on the information available, which may include an individual's criminal, medical, and probation history. An individual's previous illicit use of a medication is not grounds for prohibiting their use of that medication going forward as directed by their licensed provider.

Judges have the authority to monitor medication compliance in the context of a term of probation, supervision, or condition of release and to further the court's public safety obligation. When a judge is concerned about an individual's use or misuse of medication, the judge may act to mitigate and reduce the risk of abuse, misuse, and diversion of medication. In many cases, appropriate action will include, among other things, communication with the prescriber by a probation officer or other UJS personnel as directed by the judge.

Compliance with the ADA does not require that a court allow an individual to participate in, or benefit from, its services or programs if the person poses a "direct threat to the health or safety of others." 28 C.F.R. § 35.139. A determination that an individual poses a direct threat must be grounded in current medical knowledge or the best available objective evidence to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk. *Id*. A court may not conclude that an individual prescribed medication poses a "direct threat" based on generalizations or scientifically unsupported assumptions about medications or persons who are prescribed medication.

Individuals who believe there has been a violation of this Policy may file a grievance pursuant to the Grievance Procedure of the (UJS entity name here). (Link to Grievance Procedure and Form here.)

**Exhibit 2**

**BY OVERNIGHT MAIL**

[INSERT NAME AND ADDRESS]

      Re:    <u>United States v. Unified Judicial System of Pennsylvania, et al.</u>
                <u>Civil Action No. 22-CV-00709</u> (E.D.P.A.)
                <u>DJ No. 204-64-170</u>

Dear Complainant:

The United States Department of Justice and Defendants, the Unified Judicial System of Pennsylvania, the Blair County Court of Common Pleas, the Lackawanna County Court of Common Pleas, the Jefferson County Court of Common Pleas, and the Northumberland County Court of Common Pleas, ("Defendants") have entered into an Agreement to resolve the above-referenced civil action brought by the United States. A copy of the Agreement is enclosed.

Under the Agreement, Defendants are offering you a payment of $XXXXXX.

In order to accept Defendants' offer, you must sign and notarize the enclosed Release of Claims Form and return it within 30 days of your receipt of this letter. You may return the form by email, or by overnight carrier to:

[Name]
[Title]
[Address]
Defendant

This monetary sum is offered to you on the following condition: if you accept it, you will have to release Defendants from all claims you may have against them, arising out of the facts alleged in *United States v. Unified Judicial System of Pennsylvania, et al.*, Civil Action No. 22-cv-00709 filed in the U.S. District Court for the Eastern District of Pennsylvania by signing the attached Release of Claims Form. Within 90 days of receipt of your release, Defendants will pay you $XXXXXX. The payment will not be subject to withholding deductions, and Defendants will send you an IRS Form 1099 for the amount paid.

If you have any questions about this letter or the Agreement, you may contact me at _____ or you may contact David Knight (david.knight@usdoj.gov) or Adam Lewis (adam.lewis@usdoj.gov) at the U.S. Department of Justice's Civil Rights Division.

Sincerely,

XXXXXXXX

Enclosures:

1

Copy of Executed Agreement
Release of Claims Form


cc: David Knight, U.S. Department of Justice, Civil Rights Division
Adam Lewis, U.S. Department of Justice, Civil Rights Division
Lauren DeBruicker, U.S. Attorney's Office, Eastern District of Pennsylvania

# Exhibit 3

# RELEASE OF CLAIMS FORM

<u>United States v. Unified Judicial System of Pennsylvania, et. al.</u>
<u>Civil Action No. 22-cv-00709 (E.D.P.A.)</u>
<u>DJ No. 204-64-170</u>

      For and in consideration of the settlement amount paid by the Unified Judicial System of Pennsylvania, the Blair County Court of Common Pleas, the Lackawanna County Court of Common Pleas, the Jefferson County Court of Common Pleas, and the Northumberland County Court of Common Pleas ("Defendants") under the Agreement entered into by, and between, the United States and Defendants, regarding *United States v. Unified Judicial System of Pennsylvania, et al.*, <u>Civil Action No. 22-cv-00709</u>, I, [INSERT NAME], hereby release and forever discharge the Unified Judicial System of Pennsylvania, the Blair County Court of Common Pleas, the Lackawanna County Court of Common Pleas, the Jefferson County Court of Common Pleas, and the Northumberland County Court of Common Pleas and all current, past, and future officials, employees, agents, successors, assigns, and administrators, of and from any legal and equitable claims, actions, causes of action, suits, controversies, damages, and demands that I had, or now have, up to the date of my signature below, arising out of the facts alleged in the amended complaint filed by the United States in *United States v. Unified Judicial System of Pennsylvania, et al*.

      This Release constitutes the entire agreement between Defendants and me without exception or exclusion. This Release will be null and void if Defendants fails to offer and pay the settlement amount of $XXXXXX.

      I have read and understand this Release and sign it of my own free will. I understand that I may consult an attorney of my choosing. I also acknowledge that I have been given a copy of the Agreement.

      Signed this _____day of _____, 2023.


_____
[NAME]